**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
MARIE A. MCCRARY (State Bar No. 262670)
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 336-6545
Facsimile:  (415) 449-6469

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| SHERRI SNOW, ANTHONY PICENO and LINDA CONNER, as individuals, on behalf of themselves, the general public and those similarly situated,<br><br>    Plaintiffs,<br><br>            v.<br><br>EVENTBRITE, INC.,<br><br>    Defendant. | CASE NO.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; FALSE ADVERTISING; FRAUD, DECEIT, AND/OR MISREPRESENTATION; UNFAIR BUSINESS PRACTICES; UNJUST ENRICHMENT; BREACH OF CONTRACT; and CONVERSION**<br><br>JURY TRIAL DEMANDED |

**INTRODUCTION**

1.      Plaintiffs Sherri Snow, Anthony Piceno and Linda Conner, by and through their counsel, bring this class action against Defendant Eventbrite, Inc. to seek redress for Defendant's deceptive practices relating to its sale of live events tickets and its refusal to provide refunds for live events that have been canceled, rescheduled and/or postponed.

2.      Eventbrite sold event tickets to Plaintiffs and Class Members. Eventbrite assured customers that refunds would be issued "in accordance with all applicable local, state, provincial, national and other laws, rules and regulations." Eventbrite further assured all customers that California law applied to all ticket purchases.

3.      Section 22507 of California's Business and Professions Code, which applies to all Eventbrite ticket purchases, requires that the "ticket price of any event which is canceled, postponed, or rescheduled shall be fully refunded to the purchaser by the ticket seller upon request." After the coronavirus outbreak forced the cancelation or postponement of most large events and public gatherings, Eventbrite has consistently refused to allow for refunds for canceled, postponed and/or rescheduled events, including when events are "indefinitely" postponed.

4.      Instead, Eventbrite has tried to shift responsibility to event organizers, allowing them to refuse refunds for cancellations, postponements and rescheduled events. At best, Eventbrite has urged some organizers to "make good" when events are canceled, postponed and/or rescheduled. This "make good" requirement only appears to apply to event tickets: (i) that were purchased before March 15th; and (ii) were scheduled to take place between March 15, 2020 and May 15, 2020. All later purchases and later scheduled events that are canceled, postponed and/or rescheduled due to Covid-19 restrictions are not even covered by Eventbrite's "make good" policy.

5.      Finally, even for those event tickets that the "make good" policy applies, the policy has unlawful limitations. For example, Eventbrite will not provide refunds where organizers "are offering ***an alternate form of accommodation*** (e.g., future tickets, credit)," no matter when in the future the event might occur or how much or when the credit might apply

(emphasis added). (https://www.eventbrite.com/support/articles/en_US/Troubleshooting/eventbrites-organizer-refund-policy-requirements?lg=en_US.)

6.      Plaintiffs bring this action on behalf of themselves, a class of similarly situated individuals who have not been provided refunds for the ticket purchase price, including fees and costs, for canceled, postponed or rescheduled events, and the general public. In light of the coronavirus outbreak, Defendant has refused to provide refunds for these ticket sales. Defendant has quietly sought to force its buyers to endure the financial losses that Defendant would suffer in the entirely foreseeable scenario that world occurrences would cause the simultaneous cancellation and/or postponement of numerous public events.

7.      Plaintiffs seek an order against Defendant awarding damages, injunctive relief and restitution and requiring Defendant to, among other things: (1) to comply with its policies and applicable law, as set forth in detail below; (2) require Defendant to offer refunds to any Class member who purchased a ticket to any event that has been canceled, postponed or rescheduled; and (3) pay damages and restitution to Plaintiffs and Class members.

**PARTIES**

8.      Sherri Snow is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Lancaster, California.

9.      Anthony Piceno is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Moreno Valley, California.

10.     Linda Conner is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Citrus Heights, California.

11.     Defendant Eventbrite, Inc. ("Eventbrite" or "Defendant") is a Delaware corporation headquartered in San Francisco, California. Defendant maintains its principal place of business at 155 5TH Street, Floor 7, San Francisco, CA 94103. Eventbrite, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the United States and/or State of California.

**JURISDICTION, VENUE, APPLICABLE LAW**

12.     This Court has subject matter jurisdiction over this action pursuant to the Class

Action Fairness Act, 28 U.S.C. Section 1332(d)(2)(A) because: (i) there are 100 or more class members, and (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs.

13. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

14. The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendant within, affecting, and emanating from, the State of California. Defendant regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from services provided to persons in the State of California. Defendant has engaged, and continues to engage, in substantial and continuous business practices in the State of California. Defendant's wrongful acts and omissions occurred in California and were carried out and directed from Defendant's California headquarters by California personnel over California technological infrastructure.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the state of California, including within this District.

16. In its Terms of Service Agreement (the "Terms"), Defendant provides: "Eventbrite is based in San Francisco, California, and any legal action against Eventbrite related to our Services and that is not precluded by the arbitration provisions in these Terms must be filed and take place in San Francisco. Thus, for any actions not subject to arbitration, you and Eventbrite agree to submit to the personal jurisdiction of the federal or state courts (as applicable) located in San Francisco County, California."

17. Defendant's Terms further provides that the Terms are "a legally binding agreement between you and Eventbrite governing your access to and use of the Services and

setting out your rights and responsibilities when you use the Services."[1]

18.     The Terms later state: "These Terms are governed by the laws of the State of California, without regard to its conflict of laws rules. These laws will apply no matter where in the world you live."

19.     In accordance with California Civil Code Section 1780(d), Plaintiffs concurrently file herewith declarations establishing that they, respectively, purchased concert tickets from Eventbrite in Lancaster, Citrus Heights and/or Moreno Valley, California. (Plaintiffs' declarations are attached hereto as Exhibit A.)

20.     Plaintiffs accordingly allege that jurisdiction and venue are proper in this Court.

### SUBSTANTIVE ALLEGATIONS

21.     Eventbrite is an online seller of event tickets. Eventbrite acts as the agent to those who host events, such as promoters, venues, teams, and artist representatives (collectively, "organizers"). Eventbrite processes more than 300 million ticket sales each year.

22.     Eventbrite processes sales to events hosted all over the United States. In addition to the ticket price, Eventbrite charges consumers service fees, processing fees and other fees to purchase and use event tickets.

**Defendant's Policies for Providing Refunds Are Unfair and Unlawful**

23.     Eventbrite permits event organizers to set their own refund policies. However, not all organizers set a refund policy, which, accordingly to Eventbrite, means "it's likely that the organizer may not be granting refunds." (https://www.eventbrite.com/support/articles/en_US/How_To/can-i-get-a-refund?lg=en_US)

24.     For those organizers that do set a refund policy, a few organizers chose liberal refund policies—e.g., refunds within [x] days before an event. However, it is much more common

---

[1] "Services" means "Eventbrite's products, features and offerings are available (a) online through various Eventbrite properties including without limitation, Eventbrite, Eventbrite Communities, Eventbrite Music, Eventbrite Venue, Lanyrd, Rally, Ticketea, Ticketfly, Ticketscript Limited, and nvite ("Site(s)"); (b) off platform, including without limitation, RFID, entry management, sponsorship and marketing or distribution services; and (c) through mobile applications, webpages, application programming interfaces, and subdomains ("Applications")."

that Eventbrite organizers set a "No Refunds" policy, "which means that the event organizer does not grant refunds for this event."

(https://www.eventbrite.com/support/articles/en_US/Troubleshooting/understanding-event-refund-policies?lg=en_US.)

25.     Eventbrite's FAQ states: "Organizers set their own refund policies, and Eventbrite makes every effort to honor their refund policy. If you receive an email from the event organizer saying your refund request was declined, you can't submit another refund request for that order." (https://www.eventbrite.com/support/articles/en_US/Q_A/what-can-i-do-if-my-refund-request-was-declined?lg=en_US)

26.     For all event organizers, Eventbrite purports to set the following minimum requirements for refunds:

> We understand that refund policies vary depending on the type of event and the Organizer. Because of that, we provide flexibility for Organizers to post their own policies with respect to their events, so long as they meet the following minimum requirements:
>
> (a) Refund policies must be posted on the applicable event page;
>
> (b) "No refund" policies are permissible, but must be clearly identified as such and must otherwise comply with these minimum requirements;
>
> (c) Refund policies (including "no refund" policies) must provide for a refund or other make good for failure to provide the advertised goods and services (e.g., event cancellation);
>
> (d) Refund policies must be in accordance with all applicable local, state, provincial, national and other laws, rules and regulations, including all requirements imposed by Card Schemes or Alternative Form of Payment Frameworks (each as defined in the Merchant Agreement);
>
> (e) Refund policies must include specific instructions on how to obtain a refund, including how, when and where to direct a refund request;
>
> (f) Refund policies may not be changed with respect to purchases made prior to the date of such change and its posting to the applicable event page;
>
> (g) Refund policies must set out a specific time frame within which refund requests will be responded to, which should not exceed five (5) business days for a first response; and
>
> (h) Refund policies must otherwise be fair and reasonable.

If a refund policy is not posted or does not meet these minimum requirements set forth above, Eventbrite may (but has no obligation to) modify such refund policy such that it meets these minimum requirements. Such modification may take the form of prospectively making changes to the Organizer's posted refund policy on the applicable event page or retroactively applying such changes at the time of a dispute, chargeback and/or refund request.

(https://www.eventbrite.com/support/articles/en_US/Troubleshooting/eventbrites-organizer-refund-policy-requirements?lg=en_US)

27.    Even when adhered to, Eventbrite's minimum refund requirements do not comply with California law, including the lack of a mandatory refund for events that are canceled, rescheduled, or postponed.

28.    Indeed, in instances where the event is canceled or postponed/rescheduled, Eventbrite feebly suggests customers should contact Eventbrite's "customer experience team. They can pass your request on to our Trust & Safety team who works to protect the Eventbrite community."

29.    Eventbrite's requirement that an organizer "make good" for a failure to provide the goods and services is meaningless nonsense, which frustrates the entire policy. Moreover, it only applies to event cancellations and not rescheduled events or postponed events, including indefinitely posted events.

30.    Following the outbreak of Covid-19, Eventbrite posted "information on the coronavirus" for attendees. In it, Eventbrite does not even follow its minimum refunds policies, let alone California law. It states:

Events cancelled due to coronavirus

If an event is cancelled by the organizer, your entire purchase—the ticket price and any Eventbrite fees, should be refunded to you by the organizer.

If you have questions about whether an event will be cancelled, we suggest connecting with the organizer of this event directly.

Postponed events due to coronavirus

If an event is postponed by the organizer, we suggest connecting with the organizer of this event directly to address your questions about rescheduled dates, possible refunds, or event details.

Event organizers are expected to respond to you within 1 week (2 business days if you

paid using PayPal).

Refunds for events due to coronavirus

If you're concerned about attending an event due to coronavirus, contact the event organizer to see what options are available.

If you want to request a refund, follow the instructions in our Help Center.

(https://www.eventbrite.com/support/articles/en_US/Troubleshooting/for-event-attendees-information-on-the-coronavirus?lg=en_US) (underlining added)

31.     In order to obtain a refund, even for cancelled events, Eventbrite additionally requires the following:

Submit refund request
As a first step, check with your event creator to ask for a refund. If they're unable to offer a refund *or an experience of similar value*, you can submit a refund request here if:

Your event was cancelled AND

You purchased your ticket before March 15th AND

The event was scheduled to take place between March 15, 2020 and May 15, 2020 AND

You paid using some method other than SEPA, iDEAL, or Bancontact.[2]

(https://www.eventbrite.com/support/articles/en_US/Multi_Group_How_To/refund-requirments-for-events-canceled-due-to-covid-19?lg=en_US) (emphasis supplied)

---

[2] Plaintiffs understand that this policy was subsequently modified. However, the modifications do not cure Defendant's legal violations. The revised policy is as follows:

• The event is canceled.
• The event was scheduled to take place between March 15th, 2020 and June 15th, 2020.
• You purchased the order before March 15th, 2020.
• It has been less than 45 days since the organizer canceled the event.

If you meet these requirements and the organizer says they are unable to issue a refund or offer a similar experience, fill out this form.

Due to the high amount of requests, please allow up to 8 weeks to hear back. If approved, the funds will arrive in your account within 5 - 7 business days.

(*See* https://www.eventbrite.com/support/articles/en_US/Multi_Group_How_To/refund-requirements-for-events-canceled-due-to-covid-19?lg=en_US)

32.     In other words, even for a cancellation, Defendant does not mandate refunds; rather, an "experience of similar value" may be provided. Moreover, there is no rationale regarding the purchase date or even date requirements. Finally, if an event is postponed or rescheduled, refunds need not be (and are not) provided.

33.     Though it is unclear and misleading, the same appears to be true regarding Eventbrite's fees. Eventbrite states: "Eventbrite fees are nonrefundable, so we won't return them to the ticket buyer when a refund is processed. But there are two exceptions. We will refund the Eventbrite fees to buyers when an event is cancelled or when the buyer was charged multiple times in error and requests a refund within 7 days of purchase." Eventbrite later states that "Refunds will include the ticket price less the Eventbrite fees (which consists of the payment processing fee and the service fee combined)." Still later Eventbrite states, "If an event is cancelled or postponed, refunds will be for the entire purchase—that includes the ticket price and the Eventbrite fees." (https://www.eventbrite.com/support/articles/en_US/Troubleshooting/is-the-eventbrite-fee-refundable?lg=en_US). This last statement is false, as Eventbrite has refused to refund ticket prices or fees for postponed or rescheduled events.

**PLAINTIFFS' EXPERIENCES**

34.     On or about February 11, 2020, Plaintiff Snow purchased four tickets the Reggae Rise Up Musical Festival to take place in Las Vegas, Nevada. With fees and costs, the four tickets cost Plaintiff approximately $285. The Reggae Rise Up festival was scheduled to take place on April 18 and 19.

35.     Eventbrite later informed Plaintiff Snow that, due to the coronavirus outbreak, the Reggae Rise Up festival would be indefinitely "postponed." Eventbrite, however, would not re-fund the total amount Plaintiff Snow paid for the Reggae Rise Up festival concert tickets.

36.     Eventbrite later informed Ms. Snow that the Reggae Rise Up festival was resched-uled for October 24-25, 2020.

37.     On March 19, 2020, Plaintiff Snow requested a refund, but her request was denied.

38.     On or about January 14, 2020, Plaintiff Piceno purchased tickets to the Barbara Mason concert and dinner to take place in Commerce, California. With fees and costs, the Bar-

bara Mason tickets cost Plaintiff Piceno $755.53. The Barbara Mason show was initially scheduled to take place on March 23, 2020.

39.     Eventbrite later informed Plaintiff Piceno that, due to the coronavirus outbreak, the Barbara Mason show would be rescheduled for September 29, 2020. The Eventbrite website currently shows the Barbara Mason event as being "sold out."

40.     On or around April 16, 2020, Plaintiff Piceno requested a refund, but his request was denied.

41.     On or about December 19, 2019, Plaintiff Conner purchased tickets to the Tanya Tucker concert to take place in Sacramento, California. With fees and costs, the Tanya Tucker tickets cost Plaintiff Conner $132.35. The Tanya Tucker show was initially scheduled to take place on June 5, 2020.

42.     Eventbrite recently informed Plaintiff Conner that, due to the coronavirus outbreak, the Tanya Tucker show would be postponed. The Tanya Tucker concert in Sacramento has yet to be rescheduled.

43.     Given the pandemic, Ms. Conner is no longer interested in attending a postponed concert. She accordingly requested a refund, but her request was denied.

## CLASS ALLEGATIONS

44.     Plaintiffs bring this class action lawsuit on behalf of the following proposed class and subclass of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, defined as follows:

> The Class: All natural persons who between June 3, 2016 and the date of preliminary approval: (i) purchased tickets from Eventbrite to any event which was cancelled, postponed, or rescheduled and (ii) were not provided the opportunity to obtain a full refund for the event. (Purchases for purposes of resale shall be excluded.)

> The California Subclass: All Class Members who reside in California.

45.     This action has been brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

46.     Numerosity:  Plaintiffs do not know the exact size of the Class, but they estimate it

is composed of more than 500 persons. At a minimum, there are tens of thousands of Class Members but very likely many more. The persons in the Class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

47.    Common Questions Predominate:  This action involves common questions of law and fact to the potential classes because each class member's claim derives from the same deceptive, unlawful and/or unfair statements and omissions. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover.  The questions of law and fact common to the Class including, but are not limited to, the following:

   a.   Whether Defendant's failure to issue refunds constitutes unjust enrichment, a breach of contract, and/or conversion;

   b.   Whether Defendant's conduct violates the CLRA;

   c.   Whether Defendant's conduct is unlawful, unfair, or fraudulent in violation of the Unfair Competition Law, California Business and Professions Code §17200, *et seq*.;

   d.   Whether Defendant's made untrue or misleading statements within the meaning of California Business and Professions Code § 17500, *et seq*.;

   e.   The amount of profits and revenues earned by Defendant as a result of the misconduct;

   f.   Whether class members and/or the general public are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief; and

   g.   Whether class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

48.    Typicality:  Plaintiffs' claims are typical of the claims of other members of the Class because, among other things, all such claims arise out of the same wrongful course of

conduct in which the Defendant engaged in violation of law as described herein. Further, the damages of each member of the Class were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein. Plaintiffs and the Classes have suffered injury in fact as a result of Defendant's false representations. Plaintiffs and the Classes each purchased a ticket to an event that was canceled, postponed or rescheduled and for which Defendant refuse to provide a refund. Plaintiffs and the Class Members would not have purchased the event tickets if they had known that they would not have the option to receive a refund if the event were canceled, postponed or rescheduled.

49.     Adequacy of Representation:  Plaintiffs will fairly and adequately protect the interests of all class members because it is in their best interests to prosecute the claims alleged herein to obtain full compensation due to them for the unfair and illegal conduct of which they complain. Plaintiffs also have no interests that are in conflict with, or antagonistic to, the interests of class members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and that of the classes. By prevailing on their own claims, Plaintiffs will establish Defendant's liability to all class members. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

50.     Superiority:  There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the classes will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expenses and burden of individual litigation would make it difficult

or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

51.     Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### PLAINTIFFS' FIRST CAUSE OF ACTION
**(Breach of Contract)**
**On Behalf of Plaintiffs Piceno and Conner, the Class, and the Subclass**

52.     Plaintiffs reallege and incorporate the paragraphs of this Class Action Complaint as if set forth herein.

53.     A contract was formed between Plaintiffs and Class members on the one hand and Defendant on the other with respect to purchases made on Defendant's website.

54.     The contract that governs the transactions at issue in this case includes the Terms of Service Agreement, frequently asked questions, and/or any other policies that were on Defendant's website and operative as of the date of Plaintiffs and the Class Members' purchases.

55.     Plaintiffs and the Class performed their obligations under the contract.

56.     Defendant breached the contract when it ceased providing refunds to canceled, postponed, and/or rescheduled events as required under its policies and by California state law.

57.     Defendant's breaches were willful and not the result of mistake or inadvertence.

58.     As a result of Defendant's breaches of the contract, Plaintiffs and other Class members have been damaged in an amount to be determined at trial.

59.     Plaintiffs and Class Members seek, pursuant to Civil Code § 1689(b), to rescind the agreements and contracts relative to the event tickets sales on the following grounds: "(3) If the consideration for the obligation of the rescinding party becomes entirely void from any cause; . . . (4) If the consideration for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause; . . . (6) If the public interest will be prejudiced by permitting the contract to stand" and other causes and grounds according to proof.

### PLAINTIFFS' SECOND CAUSE OF ACTION
**(Conversion)**

**On Behalf of All Plaintiffs, the Class, and the Subclass**

60.     Plaintiffs reallege and incorporate the paragraphs of this Class Action Complaint as if set forth herein.

61.     From the moment of cancellation, postponement and/or rescheduling of the live events to which Plaintiffs and the Class purchased tickets, Plaintiffs and the Class owned and had a right to possess funds in the amount that they paid for tickets to events that would not take place as originally scheduled.

62.     Defendant intentionally and substantially interfered with property belonging to Plaintiffs and the Class by taking possession of it, refusing to refund it to Plaintiffs, preventing Plaintiffs and the Class from having access to it, and/or refusing to return it to Plaintiffs after a demand was made for its return.

63.     Plaintiffs and the Class did not consent to Defendant's conduct in withholding their funds.

64.     Plaintiffs and the Class were harmed by Defendant's conduct.

65.     As a result of Defendant's conduct, Plaintiffs and other Class members have been damaged in an amount to be determined at trial.

**PLAINTIFFS' THIRD CAUSE OF ACTION**
**(Unjust Enrichment)**
**On Behalf of All Plaintiffs, the Class, and the Subclass**

66.     Plaintiffs reallege and incorporate the paragraphs of this Class Action Complaint as if set forth herein.

67.     Plaintiffs and members of the Class conferred benefits on Defendant by paying, and being charged, ticket fees events that have been canceled, postponed and/or rescheduled.

68.     Defendant has knowledge of such benefits. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs and Class members' ticket sales. Retention of those moneys under these circumstances is unjust and inequitable because Defendant is retaining their customers full ticket price and fees despite canceling, postponing or rescheduling the events. These misrepresentations and charges caused injuries to Plaintiffs and members of the Class because they would not have paid Defendant's ticket fees had the true facts been known.

69.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiffs and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiffs and members of the Class for their unjust enrichment.

**PLAINTIFFS' FOURTH CAUSE OF ACTION**
**(Violation of the Consumers Legal Remedies Act (the "CLRA"), California Civil Code § 1750, *et seq.*)**
**On Behalf of Plaintiffs Piceno and Conner and the Subclass**

70.     Plaintiffs realleges and incorporates the paragraphs of this Class Action Complaint as if set forth herein.

71.     Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of services to consumers.

72.     Plaintiffs and other class members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

73.     The event tickets that Plaintiffs and Subclass Members from Defendant are a "good" and/or "service" within the meaning of Cal. Civ. Code § 1761(a), (b).

74.     The practices described herein, specifically Defendant's acts and practices described herein were intended to result in the sale of event tickets to the consuming public and have violated, and continue to violate, § 1770(a)(2), § 1770(a)(5), § 1770(a)(7), § 1770(a)(9), § 1770(a)(14), § 1770(a)(16), and § 1770(a)(19) of the CLRA. In violation of California Civil Code §1770(a)(2), Defendant's acts and practices constitute improper representations regarding the source, sponsorship, approval, or certification of the services they sold. In violation of California Civil Code §1770(a)(5), Defendant's acts and practices constitute improper representations that the services they sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have, e.g., that the event tickets would be refundable if the event was canceled, postponed or rescheduled. In violation of California Civil Code §1770(a)(7), Defendant's acts and practices constitute improper representations that the services it sells are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code §1770(a)(9), Defendant advertised services with intent not to

sell them as advertised. In violation of Cal. Civ. Code § 1770(a)(14), Defendant represented that a transaction involved rights, remedies, and/or obligations, which it does not have or involve. In violation of Cal. Civ. Code § 1770(a)(16), Defendant represented that the subject of a transaction has been supplied in accordance with a previous representation (that refunds would be available) when it was not.

75.     Plaintiffs seek, on behalf of themselves, the Subclass Members, and the general public an injunction to (i) enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2) and (ii) mandate that Defendant, without limitation, (1) inform consumers of their rights under section 22507 of the Business and Professions Code, (2) refuse to sell tickets if the organizer does not agree, in writing, to comply with section 22507 of the Business and Professions Code; and (3) ensure organizer compliance with section 22507 of the Business and Professions Code, by the posting of a bond or maintaining consumer funds in escrow in event of cancellation, postponed or rescheduling.. If the injunction is not entered and Defendant is not restrained from engaging in these types of practices in the future, Plaintiff, the Subclass Members, and the general public will continue to suffer harm.

76.     **CIVIL CODE § 1782 NOTICE**. Plaintiffs notice and demand that within thirty (30) days from that date of the filing of this Complaint that Defendant correct, repair, replace or otherwise rectify the unlawful, unfair, false and or deceptive practices complained of herein.

77.     Should the violations herein alleged not be corrected, repaired, replace or rectified as required by Civil Code § 1782 within 30 days with respect to all Subclass Members, Plaintiffs will seek to amend this Class Action Complaint to seek, on behalf of each Subclass Member, actual damages of at least $1000, punitive damages, an award of $5000 for each Subclass Member who is a disabled person or senior citizen, and restitution of any ill-gotten gains due to Defendant's acts and practices.

78.     Plaintiffs also request that this Court award them costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

**PLAINTIFFS' FIFTH CAUSE OF ACTION**
**(False Advertising, Business and Professions Code § 17500, *et seq.* ("FAL"))**
**On Behalf of Plaintiffs Piceno and Conner, the Class and the Subclass**

79.     Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

80.     Beginning at an exact date unknown to Plaintiffs, but within three (3) years preceding the filing of the Class Action Complaint, Defendant made untrue, false, deceptive and/or misleading statements in connection with the advertising, marketing, and sale of event tickets.

81.     Defendant made representations and statements (by omission and commission) that led reasonable customers to believe that they could receive refunds for the purchase price of tickets paid for events that were canceled, postponed or rescheduled.

82.     Plaintiffs and the Class Members relied to their detriment on Defendant's false, misleading and deceptive advertising and marketing practices, including each of the misrepresentations and omissions set forth above. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, refraining from using or purchasing event tickets.

83.     Defendant's acts and omissions are likely to deceive the general public.

84.     Defendant engaged in these false, misleading and deceptive advertising and marketing practices to increase its profits. Accordingly, Defendant have engaged in false advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and Professions Code.

85.     The aforementioned practices, which Defendant used, and continue to use, to its significant financial gain, also constitutes unlawful competition and provides an unlawful advantage over Defendant's competitors as well as injury to the general public.

86.     As a direct and proximate result of such actions, Plaintiffs and the Class Members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. In particular, Plaintiffs

and Class Members lost money or property as a result of Defendant's UCL violations because: (a) they would not have purchased or paid for Defendant's event tickets absent Defendant's representations and omission of a warning that it would retain members' ticket fees if the events were canceled, postponed or rescheduled; (b) they would not have purchased tickets on the same terms absent Defendant's representations and omissions; (c) they paid a price premium for Defendant's tickets based on Defendant's misrepresentations and omissions; and/or (d) Defendant's tickets did not have the characteristics, benefits, or quantities as promised.

87.     Plaintiffs seek, on behalf of themselves and the Class Members, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendant from Plaintiffs, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon.

88.     Plaintiffs seek, on behalf of themselves, the Class Members, and the general public, a declaration that the above-described practices constitute false, misleading and deceptive advertising.

89.     Plaintiffs seek, on behalf of themselves, the Class Members, and the general public, an injunction to (i) prohibit Defendant from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein and (ii) mandate that Defendant, without limitation, (1) inform consumers of their rights under section 22507 of the Business and Professions Code, (2) refuse to sell tickets if the organizer does not agree, in writing, to comply with section 22507 of the Business and Professions Code; and (3) ensure organizer compliance with section 22507 of the Business and Professions Code, by the posting of a bond or maintaining consumer funds in escrow in event of cancellation, postponed or rescheduling. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which it is not entitled. Plaintiffs, those similarly situated and the general

public have no other adequate remedy at law to ensure future compliance with the California

Business and Professions Code alleged to have been violated herein.

**PLAINTIFFS' SIXTH CAUSE OF ACTION**
**(Common Law Fraud, Deceit and/or Misrepresentation)**
**On Behalf of Plaintiffs Piceno and Conner, the Class and the Subclass**

90.     Plaintiffs realleges and incorporate by reference the paragraphs of this Class

Action Complaint as if set forth herein.

91.     Defendant has fraudulently and deceptively informed Plaintiffs and the Class

Members that their ticket purchases would be governed by California law and they would

accordingly receive refunds for the purchase price paid for of tickets to events that were canceled,

postponed and/or rescheduled. Further, Defendant failed to disclose that it would refuse to

provide refunds to events that were canceled, postponed and/or rescheduled.

92.     These misrepresentations and omissions were known exclusively to, and actively

concealed by, Defendant, not reasonably known to Plaintiffs, and material at the time they were

made. Defendant's misrepresentations and omissions concerned material facts that were essential

to the analysis undertaken by Plaintiffs as to whether to purchase event tickets. In misleading

Plaintiffs and not so informing Plaintiffs, Defendant breached its duty to them. Defendant also

gained financially from, and as a result of, its breach.

93.     Plaintiffs and the Class Members relied to their detriment on Defendant's

misrepresentations and fraudulent omissions. Had Plaintiffs and those similarly situated been

adequately informed and not intentionally deceived by Defendant, they would have acted

differently by, without limitation: (i) declining to purchase the event tickets, (ii) purchasing fewer

event tickets, or (iii) paying less for the event tickets.

94.     By and through such fraud, deceit, misrepresentations and/or omissions, Defendant

intended to induce Plaintiffs and those similarly situated to alter their position to their detriment.

Specifically, Defendant fraudulently and deceptively induced Plaintiffs and those similarly

situated to, without limitation, purchase the event tickets.

95.     Plaintiffs and those similarly situated justifiably and reasonably relied on

Defendant's misrepresentations and omissions, and, accordingly, were damaged by Defendant.

96.    As a direct and proximate result of Defendant's misrepresentations and/or omissions, Plaintiffs and those similarly situated have suffered damages, including, without limitation, the amount they paid for the event tickets.

97.    Defendant's conduct as described herein was wilful and malicious and was designed to maximize Defendant's profits even though Defendant knew that it would cause loss and harm to Plaintiffs and those similarly situated.

### PLAINTIFFS' SEVENTH CAUSE OF ACTION
**(Unlawful, unfair, and fraudulent trade practices violation of Business and Professions Code § 17200, *et seq.*)**
**On Behalf of All Plaintiffs, the Class and the Subclass**

98.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

99.    Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendant have engaged, and continue to engage, in unlawful, unfair, and fraudulent trade practices in California by engaging in the unlawful, unfair, and fraudulent business practices outlined in this complaint.

100.    In particular, Defendant has engaged, and continues to engage, in unlawful practices by, without limitation (i) violating the CLRA as described herein; (ii) violating the FAL as described herein; (iii) violating section 22506 of the Business and Professions Code; (iv) a breach of the contract between Plaintiffs and Class members on the one hand and Defendant on the other; (v) conversion; and (vi) unjust enrichment.

101.    In particular, Defendant has engaged, and continues to engage, in unfair and fraudulent practices by, without limitation, the following: (i) misrepresenting that the purchase price for tickets to events that were cancelled, rescheduled or postponed would be refunded; and (ii) failing to disclose that Defendant would prevent customers from obtaining refunds of the purchase price paid for tickets to events that were cancelled, rescheduled or postponed.

102.    Plaintiffs and those similarly situated relied to their detriment on Defendant's unlawful, unfair, and fraudulent business practices. Had Plaintiffs and those similarly situated been adequately informed and not deceived by Defendant, they would have acted differently by,

declining to purchase event tickets from Defendant.

103.    Defendant's acts and omissions are likely to deceive the general public.

104.    Defendant engaged in these deceptive and unlawful practices to increase its profits. Accordingly, Defendant has engaged in unlawful trade practices, as defined and prohibited by section 17200, *et seq.* of the California Business and Professions Code.

105.    The aforementioned practices, which Defendant has used to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

106.    As a direct and proximate result of such actions, Plaintiffs and the other class members, have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and the class members lost the amount they paid for the event tickets.

107.    As a direct and proximate result of such actions, Defendant has enjoyed, and continues to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

108.    Plaintiffs seek, on behalf of themselves and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendant from Plaintiffs, the general public, or those similarly situated by means of the deceptive and/or unlawful trade practices complained of herein, plus interest thereon.

109.    Plaintiffs seek, on behalf of those similarly situated, and the general public, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

110.    Plaintiffs seek, on behalf of themselves, those similarly situated, and the general public, an injunction to (i) prohibit Defendant from continuing to engage in the deceptive and/or unlawful trade practices complained of herein and (ii) mandate that Defendant, without limitation, (1) inform consumers of their rights under section 22507 of the Business and Professions Code, (2) refuse to sell tickets if the organizer does not agree, in writing, to comply with section 22507

of the Business and Professions Code; and (3) ensure organizer compliance with section 22507 of the Business and Professions Code, by the posting of a bond or maintaining consumer funds in escrow in event of cancellation, postponed or rescheduling. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which they were not entitled.  Plaintiffs, those similarly situated, and the general public, have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, those similarly situated, and the general public, respectfully requests that the Court enter judgment against Defendant as follows:

A.  Certification of the proposed Class and Subclass, including appointment of Plaintiffs' counsel as class counsel;

B.  An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint, including without limitation (1) informing consumers of their rights under section 22507 of the Business and Professions Code, (2) refusing to sell tickets if the organizer does not agree, in writing, to comply with section 22507 of the Business and Professions Code; and (3) ensuring organizer compliance with section 22507 of the Business and Professions Code, by the posting of a bond or maintaining consumer funds in escrow in event of cancellation, postponed or rescheduling;

C.  An award of compensatory damages in an amount to be determined at trial on all causes of action except number four (UCL) and number seven (CLRA), compensatory damages under the CLRA are held in reserve pending completion of the statutory notice period;

D.  An award of statutory damages in an amount to be determined at trial on all causes of action except number four (UCL) and number seven (CLRA), statutory damages under the CLRA are held in reserve pending completion of the statutory notice period;

E.  An award of punitive damages in an amount to be determined at trial on all causes of action except number four (UCL) and number seven (CLRA), punitive damages under the CLRA are held in reserve pending completion of the statutory notice period;

F.  An award of restitution in an amount to be determined at trial;

G.  An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

H.  For reasonable attorney's fees and the costs of suit incurred; and

I.  For such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: June 4, 2020                    **GUTRIDE SAFIER LLP**

*/s Seth A. Safier/s/*
Seth A. Safier, Esq.
Marie McCrary, Esq.
100 Pine Street, Suite 1250
San Francisco, CA 94111

Exhibit A

## EXHIBIT A

I, Sherri Snow, declare:

1.    I am the Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.    I submit this Declaration pursuant to California Code of Civil Procedure section 2215.5 and California Civil Code section 1780(d).

3.    I understand that Eventbrite, Inc. has its principle place of business and headquarters in San Francisco, California.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed this 15 ___ day of May 2020, in Lancaster, California.

*DocuSigned by:*

*Sherri Snow*

72287CCFA6B648A...

_____

Sherri Snow

-1-

DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION

DocuSign Envelope ID: D829D2BB-16C5-466C-B13D-8D417E52A1A7

## EXHIBIT A

I, Anthony Piceno, declare:

1.      I am the Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.      I submit this Declaration pursuant to California Code of Civil Procedure section 2215.5 and California Civil Code section 1780(d).

3.      I purchased the electronic tickets at issue in this litigation from the Eventbrite website while in Moreno Valley, California. I further understand that Eventbrite, Inc. has its principle place of business and headquarters in San Francisco, California.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.     30

Executed this ___ day of May 2020, in Moreno Valley, California.

DocuSigned by:

9B69045041D44E4...

_____
Anthony Piceno

DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION

DocuSign Envelope ID: 8383F9A4-825C-4DC9-B8A5-DE9C9D7F2255

**<u>EXHIBIT A</u>**

I, Linda L. Conner, declare:

1.      I am a Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.      I submit this Declaration pursuant to California Code of Civil Procedure section 2215.5 and California Civil Code section 1780(d).

3.      I purchased the electronic tickets at issue in this litigation from the Eventbrite website while in Citrus Heights, California. I further understand that Eventbrite, Inc. has its principle place of business and headquarters in San Francisco, California.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed this 3rd day of June 2020, in Citrus Heights, California.



DocuSigned by:

AEB2AD9AB03F444...

_____

Linda L. Conner

DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION