1  **GUTRIDE SAFIER LLP**
   Seth A. Safier (State Bar No. 197427)
2  Marie A. McCrary (State Bar No. 262670)
   100 Pine Street, Suite 1250
3  San Francisco, California 94111
   Telephone: (415) 639-9090
4  Facsimile:  (415) 449-6469
   seth@gutridesafier.com
5  marie@gutridesafier.com

6  *Attorneys for Plaintiffs*

7

8  **UNITED STATES DISTRICT COURT**
   **NORTHERN DISTRICT OF CALIFORNIA**

9

10  SHERRI SNOW, ANTHONY PICENO and     CASE NO. 3:20-cv-03698-WHO
    LINDA CONNER, as individuals, on behalf
11  of themselves, the general public and those    PLAINTIFFS' OPPOSITION TO
    similarly situated,                             DEFENDANT'S MOTION TO COMPEL
12                                                  ARBITRATION
    Plaintiffs,
13                                                  Hon. William H. Orrick
    v.
14                                                  Date: October 7, 2020
                                                    Time: 2:00 pm
15  EVENTBRITE, INC.,                               Ctrm: Courtroom 2; 17th Floor

16  Defendant.

**TABLE OF CONTENTS**

I.   INTRODUCTION ...........................................................................................................1

II.  FACTUAL CIRCUMSTANCES SURROUNDING EVENTBRITE'S
     ARBITRATION CLAUSE ............................................................................................1

     A. Background Allegations..........................................................................................1

     B. Eventbrite's E-Commerce Website.........................................................................2

III. ARGUMENT .................................................................................................................8

     A. The Arbitration Agreement is Not Binding on Plaintiffs Because They Did Not
        Receive Adequate Notice of the Terms or Assent to Them. ..................................8

     B. Eventbrite's Sign Up Process Does Not Provide Constructive Notice. ................10

     C. Eventbrite's Check Out Process is No Better. ......................................................12

IV.  CONCLUSION ............................................................................................................14

## I. INTRODUCTION

Defendant Eventbrite, Inc. ("Eventbrite") is an online ticket seller. When selling tickets, it promised Plaintiff, and those similarly situated, that it would refund, upon their request, the ticket price of any event, which was *canceled, postponed, or rescheduled*. This is consistent with California law, which Eventbrite applied nationwide to all tickets sales. However, the pandemic hit, and Eventbrite reneged on its promise.

Instead of just honoring its promise and providing refunds when requested, Eventbrite now argues that "event organizers," and not Eventbrite, are responsible for "providing relief to impacted consumers." Eventbrite does not deny that it took the Plaintiffs' money. Rather, it contends it cannot be held responsible because it spent the money—i.e., gave it to "event organizers." Eventbrite further attempts to duck its promises by forcing Plaintiffs to individually arbitrate their claims based upon a complex arbitration provision buried deep in one of its "Terms of Service" agreements.

Plaintiffs are not bound to the arbitration provision in the Terms of Service because they neither had constructive notice of nor assented to it. Under controlling Ninth Circuit authority, browsewrap agreements cannot be enforced unless: (i) there is a conspicuously placed hyperlink to the terms; and (ii) there is notice informing the user that taking a specified action will demonstrate assent to those terms. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014). Eventbrite's Terms of Service failed to comply with these requirements. This motion to compel arbitration should be denied.

## II. FACTUAL CIRCUMSTANCES SURROUNDING EVENTBRITE'S ARBITRATION CLAUSE

### A. Background Allegations

Eventbrite is an online ticket seller. It markets, advertises and sells tickets to all types of events across the nation. In conjunction with selling tickets, Eventbrite assured customers that it would issue refunds "in accordance with all applicable local, state, provincial, national and other

laws, rules and regulations." Eventbrite further assured all customers that California law applied to all ticket purchases, including section 22507 of California's Business and Professions Code, which provides that the "ticket price of any event which is canceled, postponed, or rescheduled shall be fully refunded to the purchaser by the ticket seller upon request."

Yet, after the coronavirus outbreak forced the cancelation or postponement of most large events and public gatherings, Eventbrite refused to provide refunds for canceled, postponed and/or rescheduled events, including when events are "indefinitely" postponed. Instead, when it actually bothered to pick up the phone or respond to customer emails, Eventbrite told customers, including Plaintiffs and those similarly situated, to talk to event organizers.

Though Eventbrite generally allowed event organizers to set their own refund policies for tickets sold through Eventbrite, it nevertheless promised consumers that it maintains minimum requirements for refunds, such as providing a refund or other "make good" for events that do not take place. It also promised that it (and all event organizers) would comply with California law. Indeed, Eventbrite specifically promised that if an event is cancelled or postponed, refunds will be issued for the entire purchase, including Eventbrite fees. ECF 1 at ¶ 26.

In reality, Eventbrite does not universally provide complete refunds for events that are canceled, rescheduled, or postponed. Further, while it describes itself as a "global leader" in ticketing and "powering live experiences" around the world, following the outbreak of COVID-19, Eventbrite also ducked its previous directive to contact its customer experience team and instead passed the buck directly to organizers to respond to consumer complaints. ECF 1 at ¶ 30. While it continues to hold consumer funds captive in violation of its own policies and California law, Eventbrite now seeks to force consumers into individual arbitration.

**B.  Eventbrite's E-Commerce Website**

Eventbrite's website and mobile application are e-commerce platforms for the sale of live event tickets. All Eventbrite users are required to sign up for an account before purchasing

tickets. Beneath the various sign-up buttons, in the smallest text displayed on the page, is a disclosure that states: "By clicking 'Get Started' or 'Continue with Facebook'[1], I accept the Eventbrite Terms Of Service, Community Guidelines and have read the Privacy Policy."

(https://www.eventbrite.com/signin/?referrer=%2F)

On the sign up screen that Eventbrite contends Plaintiffs visited when they agreed to Eventbrite's Terms of Service agreement, Eventbrite did not include a checkbox or other steps required to indicate the user read or assented to the hyperlinked "Terms and Conditions." Nor does Eventbrite provide any evidence that any of the Plaintiffs actually viewed the Terms of Service.[2] *See* ECF 18. Instead, Eventbrite relies exclusively on Plaintiffs' registration of

---

[1] There is no such agreement for those that "Continue with Apple."

[2] Moreover, when customers visit the Terms, they are taken to the top of the agreement. The Terms state:

> Please read these Terms of Service (or Terms, as further described in Section 1.4) carefully as they contain important information about your legal rights, remedies and

accounts and/or usage of the Eventbrite platforms to purchase tickets to claim that each Plaintiff is bound by the Terms.

Eventbrite's arbitration provision is substantially as follows:

9. IMPORTANT: BINDING ARBITRATION AND CLASS ACTION WAIVER PROVISIONS.

PLEASE READ THIS SECTION CAREFULLY AS IT AFFECTS YOUR RIGHTS. ANY DISPUTE OR CLAIM UNDER THESE TERMS OR WITH RESPECT TO THE SERVICES WILL BE SETTLED BY BINDING ARBITRATION OR IN SMALL CLAIMS COURT (TO THE EXTENT THE CLAIM QUALIFIES) AND WILL TAKE PLACE ON AN INDIVIDUAL BASIS ONLY; YOU AGREE THAT CLASS, CONSOLIDATED OR REPRESENTATIVE ARBITRATIONS AND CIVIL ACTIONS ARE NOT PERMITTED AND ANY RIGHTS TO BRING SUCH ACTIONS ARE WAIVED BY EACH PARTY.

The parties understand that, absent this mandatory provision, they would have the right to sue in court and have a jury trial. They further understand that, in some instances, the costs of arbitration could exceed the costs of litigation and the right to discovery may be more limited in arbitration than in court.

(a) Contact Us First.
If you have a question or concern about the Services, please contact us first. Our customer support team will try to answer your question or resolve your concern.

(b) Agreement to Arbitrate.
In the unlikely event that our customer support team is unable to resolve your concerns, the parties (you and we) each hereby agree to resolve any and all disputes or claims under these Terms, with respect to the Services, or related to our relationship through binding arbitration or in small claims court (to the extent the claim qualifies) instead of in courts of general jurisdiction, and only on an individual basis. In no event may either we or you seek to resolve a dispute with the other as part of any purported class, consolidated or representative proceeding. Binding

---

obligations. By accessing or using Eventbrite's Services, you agree to comply with and be bound by these Terms, as applicable to you.

Then in smaller type below, they additionally state:

> **TIP:** To learn more about Eventbrite's Legal Terms, take a look here.
>
> **NOTE:** IMPORTANT NOTICE: Section 9 of these Terms of Service contains a binding arbitration provision and class action waiver that may affect your legal rights. Please read Section 9 very carefully.

Section 9 is not hyperlinked. When a customer clicks to learn more about Eventbrite's Legal Terms, they are taken to https://www.eventbrite.com/l/LegalTerms/. That page provides no further information. Rather, it is a feedback loop.

arbitration is subject to very limited review. Only the arbitrator appointed pursuant to this Section, and not any federal, state or local court will have the authority to resolve any dispute or claim relating to this Section including, without limitation, regarding the scope, enforceability and arbitrability of these Terms. This arbitration provision will survive termination of these Terms. These Terms evidence a transaction in interstate commerce and the interpretation and enforcement of this Section 9 is governed by the Federal Arbitration Act, notwithstanding the choice of law set forth in Section 9(h) below.

(c) Scope of Agreement.
This agreement to arbitrate is intended to be broadly interpreted as to legal disputes between you and us. It includes, but is not limited to: (i) all claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory; (ii) all claims that arose before this or any prior agreement (including, but not limited to, claims relating to advertising); and (iii) all claims that may arise after termination of these Terms and/or your use of the Services.

(d) Exceptions.
Notwithstanding this Agreement to arbitrate, either party may (i) bring an action on an individual basis in small claims court (to the extent the applicable claim qualifies); or (ii) bring enforcement actions, validity determinations or claims arising from or relating to theft, piracy or unauthorized use of intellectual property in state or federal court in the U.S. Patent or Trademark Office to protect its Intellectual Property Rights ("Intellectual Property Rights" means patents, copyrights, moral rights, trademarks, and trade secrets, but not privacy or publicity rights). In addition, the portion of any dispute or complaint relating to our participation in the US-EU or US-Swiss Privacy Shield Frameworks is subject to the Dispute Resolution section of our Privacy Policy before being subject to this Section.

(e) No Class Actions.
YOU AND EVENTBRITE AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, CONSOLIDATED OR REPRESENTATIVE PROCEEDING. THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS, MAY NOT PRESIDE OVER ANY FORM OF CLASS, CONSOLIDATED OR REPRESENTATIVE PROCEEDING AND MAY ONLY PROVIDE RELIEF IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF WARRANTED BY THAT PARTY'S INDIVIDUAL CLAIM.[3]

---

[3] Because this provision purports to waive a consumer's right to seek an injunction on behalf of the public at large, it is unenforceable under California law. *McGill v. Citibank, N.A.*, 2 Cal.5th 945, 958 (2017) ("[I]nsofar as the arbitration provision here purports to waive McGill's right to request in any forum such public injunctive relief, it is invalid and unenforceable under

(f) Notice of Dispute.
A party who intends to seek arbitration must first send to the other a written Notice of Dispute ("Notice"). The Notice to Eventbrite must be addressed to the following address ("Notice Address") and must be sent by certified mail: Eventbrite, Inc., Attn: Legal Department, 155 5th Street Floor 7, San Francisco, CA 94103, USA. Notice to you will be addressed to a mailing, home or payment address currently on record with Eventbrite and must be sent by certified mail. If Eventbrite has no records of such physical address, such notice may be delivered to your Eventbrite account email address. The Notice must (i) describe the nature and basis of the claim or dispute; and (ii) set forth the specific relief sought. If Eventbrite and you do not reach an agreement to resolve the claim within sixty (60) calendar days after the Notice is received, you or Eventbrite may commence an arbitration proceeding.

(g) Arbitration Proceedings.
The arbitration will be governed by the Commercial Arbitration Rules, or, if the actions giving rise to the dispute or claim relate to your personal or household use of the Services (rather than business use), the Consumer Arbitration Rules (in each case, the "AAA Rules") of the American Arbitration Association ("AAA"), as modified by this Section 9, and will be administered by the AAA and settled by a single arbitrator. (The AAA Rules are also available by calling the AAA at 1-800-778-7879.) All issues in dispute between the parties are for the arbitrator to decide, including, but not limited to, issues relating to the scope, enforceability, and arbitrability of this Section 9.

(h) Location of Arbitration Proceedings. If you are a Consumer, any arbitration hearings will take place (at your option) either in the county of your residence or by phone, except that is you are a Consumer whose residence is outside of the United States, the hearing will take place either in San Francisco, California or by phone or videoconference, at your option and as permitted by the AAA Rules. If you are a business (i.e., your use of the Services were for commercial use), then unless Eventbrite and you agree otherwise, any arbitration hearings will take place in a reasonably convenient location in the United States for both parties with due consideration of their ability to travel and other pertinent circumstances. If the parties are unable to agree on a location, AAA will determine the location. If your claim is for ten thousand dollars ($10,000) or less, we agree that you may choose whether the arbitration will be conducted solely on the basis of documents submitted to the arbitrator, through a telephonic hearing, or by an in-person hearing as established by the AAA Rules. If your claim exceeds ten thousand dollars ($10,000), the right to a hearing will be determined by the AAA Rules. Regardless of the manner in which the arbitration is conducted, the arbitrator will issue a reasoned written decision sufficient to explain the essential findings and conclusions on which the award is based. All decisions by the arbitrator will be final and binding and judgment on the award rendered may be entered in any court having jurisdiction.

---

California law."). The Ninth Circuit has subsequently held that the *McGill* rule is not preempted by the Federal Arbitration Act. *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 830-31 (2019).

(i) Costs of Arbitration; Legal Fees.

i. Payment of Costs and Expenses. Payment of all filing, administration, and arbitrator costs and expenses imposed by AAA will be governed by the AAA rules, provided that if you are initiating an arbitration against Eventbrite and the value of the relief sought is ten thousand dollars ($10,000) or less, then Eventbrite will advance all filing, administrative and arbitration costs and expenses imposed by AAA (subject to reimbursement as set forth below). Further, if the circumstances in the preceding sentence apply and your claim arises from your use of the Services as a Consumer, but the value of relief sought is more than ten thousand dollars ($10,000) and you demonstrate to the arbitrator that such costs and expenses would be more expensive than a court proceeding, then Eventbrite will pay the amount of any such costs and expenses. In the event that the arbitrator determines that all of the claims you assert in arbitration are frivolous according to Federal Rule of Civil Procedure 11, you agree to reimburse Eventbrite for all such cost and expenses that Eventbrite paid and that you would have been obligated to pay under the AAA rules.

ii. Payment of Legal Fees. Just as in any court proceeding, each party will initially bear its own attorneys' fees and expenses in connection with any arbitration. Should either party be determined to have substantially prevailed in the arbitration, then upon such party's request, the arbitrator will award such prevailing party the reasonable attorneys' fees and expenses that it incurred in connection with the arbitration, provided that to the extent that the dispute or claim relate to your personal or household use of the Services (rather than business use) Eventbrite will not seek to recover its attorneys' fees and expenses in an arbitration initiated by you. The arbitrator may make rulings and resolve disputes as to the reimbursement of attorneys' fees and expenses upon request from either party made within fourteen (14) days of the arbitrator's ruling on the merits.

(j) Future Changes. Notwithstanding any provision in these Terms to the contrary, you and Eventbrite agree that if Eventbrite makes any future change to this arbitration provision (other than a change to the Notice Address) Eventbrite will provide you with notice of such change and you may reject any such change by sending us written notice within thirty (30) calendar days of the change to the Notice Address provided above. By rejecting any future change, you are agreeing that you will arbitrate any dispute between us in accordance with the language of this provision as unmodified by such rejected change.

(k) Special Severability.

In the event that any provisions of this Section 9 are found to be invalid or unenforceable for any dispute or claim, then, the entirety of this Section 9 will be null and void with respect to such dispute or claim and Section 23 will apply in lieu of this Section 9.

(l) Opt Out.

You have the right to opt out and not be bound by the arbitration or class action

waiver provisions set forth above by sending (from the email address we associate with you as a User) written notice of your decision to opt-out to legal@eventbrite.com, with the subject line, "ARBITRATION AND CLASS ACTION WAIVER OPT-OUT." The notice must be sent within thirty (30) days of your first use of the Services or your agreement to these Terms (whichever is later); otherwise, you will be bound to arbitrate disputes in accordance with the terms of those paragraphs. Note that if you opt out of these arbitration provisions, Eventbrite also will not be bound by them.

(https://www.eventbrite.com/support/articles/en_US/Troubleshooting/eventbrite-terms-of-service?lg=en_US).

## III. ARGUMENT

### A. The Arbitration Agreement is Not Binding on Plaintiffs Because They Did Not Receive Adequate Notice of the Terms or Assent to Them.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010); *In re Henson*, 869 F.3d 1052, 1059 (9th Cir. 2017). In determining whether a valid arbitration agreement exists, federal courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chic., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The Federal Arbitration Act ("FAA") is not relevant to this threshold issue and "there is no thumb on the scale in favor of finding an arbitration agreement to exist." *Norcia v. Samsung Telecomms. Am.*, LLC, No. 14-cv-00582-JD, 2014 U.S. Dist. LEXIS 131893, at *4, *aff'd, Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279 (9th Cir. 2017); *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000). To form a valid contract under California law, the parties must demonstrate mutual manifestation of assent, which "applies with equal force to arbitration provisions contained in contracts purportedly formed over the Internet." *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 862, (2016) (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014)). Eventbrite, "as the party seeking to compel arbitration, has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Mitchell v. U-Haul Co. of Cal.*, No. 16-cv-04674-JD, 2017 U.S. Dist. LEXIS 79064, at *1 (N.D. Cal. May 23, 2017) (citing *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)).

Assent to an electronic agreement can be demonstrated by showing either that: (i) the consumer had actual knowledge of the arbitration provision or (ii) a conspicuous notice that

would have put "a reasonably prudent user on inquiry notice of the terms of the contract." *Nguyen*, 763 F.3d at 1177; *see also Long*, 245 Cal. App. 4th at 865 (quoting *Specht*, 306 F.3d at 35).[4] Eventbrite has provided no evidence that Plaintiffs had actual notice of the Terms. Unlike other retailers, it does not require users to affirmatively click a box confirming assent to the Terms of Service. In fact, it maintains that it does not even track whether any consumers have ever clicked on the Terms of Service in the normal course of business. Thus, whether Plaintiffs assented to the arbitration provision turns on whether Eventbrite can prove that its website provided them with "constructive notice" of its terms. *See id.* On this point, "California law is clear—an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Long*, 245 Cal. App. 4th at 862 (internal quotation marks omitted).

The Ninth Circuit has explained that arbitration agreements formed on the internet "come primarily in two flavors: 'clickwrap' (or 'click-through') agreements, in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use" that include an arbitration clause; and "'browsewrap' agreements, where a website's terms and conditions [and arbitration clause] are generally posted on the website via a hyperlink at the bottom of the screen." *Nguyen*, 763 F.3d at 1175-76. "The defining feature of browsewrap agreements is that the user can continue to use the web site or its services without visiting the page hosting the browsewrap agreement or even knowing that such a webpage exists." *Id.*

It is undisputed that Eventbrite's Terms of Service, both in the sign up and check out process, fall into the browsewrap not clickwrap category. As a result, the validity of Eventbrite's browsewrap arbitration clause turns on whether Eventbrite provides constructive notice by prompting "users to take affirmative action to demonstrate assent … in close proximity of the hyperlink to relevant buttons users must click on." *Id.* at 1179.

---

[4] Although the Ninth Circuit's decision in *Nguyen* was premised on New York law, California courts have adopted its reasoning as applying the same "manifestation of assent analysis dictated by California law." *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 863 (2016).

**B.     Eventbrite's Sign Up Process Does Not Provide Constructive Notice.**

Eventbrite's hyperlink to the Terms of Service in its sign up process is in a small font in comparison to the remainder of the text and the language regarding purported assent are grayed out, as shown below:



(https://www.eventbrite.com/signin/?referrer=%2F)

Further, the use of the same blue font color as the "Continue with Facebook" button makes it more likely that a user would associate the Terms of Service hyperlink as related to signing up or logging into the site via Facebook. The inconspicuous nature of the terms and conditions here is very similar to that in *Berman v. Freedom Fin. Network, LLC*, No. 18-cv-01060-YGR, 2020 U.S. Dist. LEXIS 160406, at *1 (N.D. Cal. Sep. 1, 2020), in which the court found the hyperlinked terms and conditions to inconspicuous to provide constructive notice.  As the Court stated in that case, although "[a]s in *Nguyen*, the hyperlink to [the terms and conditions] is located in proximity to the button with which the user must interact to continue" the relevant phrase "'I understand and agree to the Terms and Conditions which includes mandatory ***arbitrary*** and Privacy Policy' is formatted in black font against a white background which is exceedingly small compared to the larger, more colorful and high-contrast fonts on the

rest of the page, making it difficult to read on a large, high-resolution monitor, much less a mobile device." *Id.* at *8. Indeed, the facts there were even more compelling for notice than they are here because the sign in page referenced mandatory arbitration, whereas here the small, greyed out reference to the terms and conditions makes no mention of arbitration. Numerous courts have denied arbitration clauses in similar circumstances. *See Cullinane v. Uber Techs., Inc.*, 893 F.3d 53 (1st Cir. 2018) (finding a hyperlink was insufficiently conspicuous where "the presence of other terms on the same screen with a similar or larger size, typeface, and with more noticeable attributes diminished the hyperlink's capability to grab the user's attention"); *Rushing v. Viacom Inc.*, 2018 U.S. Dist. LEXIS 176988, *6-7 (N.D. Cal. Oct. 15, 2018) (refusing to enforce arbitration clause inside browsewrap link website user was unlikely to see); *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 404 (E.D.N.Y. 2015) (finding that "terms of use" were not made "readily and obviously available to [the consumer]" where the "hyperlink to the 'terms of use' was not in large font, all caps, or in bold" and noting "[b]y contrast, the 'SIGN IN' button is very user-friendly and obvious, appearing in all caps, in a clearly delineated box in both the upper right hand and the lower left hand corners of the homepage").

However, even if the Court found that the small greyed out text was sufficient to put consumers on constructive notice of an arbitration provision, the plain language of that small greyed out text indicates that by clicking "Continue with Apple," a user, including Plaintiffs, are not accepting the Eventbrite Terms, Community Guidelines or Privacy Policy. Though it remains unclear what "Continue with Apple" means, each of the Plaintiffs owns an iPhone and/or Apple computers. They do not, however, recall if they signed up for the Eventbrite service with their iPhones/Apple Computes and/or if they "continued with Apple," whatever that means. It is, however, Eventbrite's burden to prove consent—i.e., that Plaintiffs either "got started" or "continued with Facebook," which it has not done. *See Berman*, 2020 U.S. Dist. LEXIS 160406, at *7 (holding that defendant had failed to meet its evidentiary burden to establish the sign in "flow" that Plaintiffs had followed). Accordingly, Plaintiffs did not assent, actually or constructively, to the Terms when they signed up for an Eventbrite account.

### C.    Eventbrite's Check Out Process is No Better.

When purchasing tickets on Eventbrite, it is undisputed that a user begins from a purchase page with no warning of Eventbrite's Terms of Service other than a nondescript link in the footer of the page. An example is shown below: (https://www.eventbrite.com/e/the-call-within-dismantling-racism-from-the-inside-out-tickets-115273857210?aff=ebdssbcitybrowse).

Once a user selects the large green "Tickets" button, a pop-up window appears confirming event details, an order summary, and a large orange "Checkout" button, again with no mention of Eventbrite's Terms of Service:



Upon selecting "Checkout," the pop-up window refreshes, and a user is directed to enter contact, payment and ticket information.

[Screenshot of Eventbrite checkout page showing Contact Information fields (First name, Last name, Email, Confirm email), Payment method selection (Credit or Debit Card, PayPal), Ticket 1 · General Admission section, a Place Order button, and an Order Summary sidebar showing "The Call Within – Dismantling Racism from the Inside Out with Rev. Jacqui Lewis, Ph.D.", 1 x General Admission $20.00, Subtotal $20.00, Fees $2.03, Delivery $0.00, 1 x eTicket, Total $22.03.]

This particular window has a scroll bar, making it entirely possible to enter all details necessary to complete a ticket purchase without ever scrolling down to view the link to the Terms of Service.[5] Such practices can hardly be classified as conspicuous. *See Nguyen*, 763 F.3d at 1178 (refusing to enforce browsewrap arbitration agreement even where "the content of the webpage [was] compact enough that a user can view the link without scrolling"). Eventbrite has failed to meet its burden of showing Plaintiffs had actual or constructive knowledge of the Terms of

---

[5] Even if a user scrolls down to see the language: "By clicking "Place Order", I accept the Terms of Service and have read the Privacy Policy. I agree that Eventbrite may share my information with the event organizer." That information is greyed out and in a small font. Moreover, it is directly below two opt out check boxes.

    Keep me updated on the latest news, events, and exclusive offers from this event organizer.

    Eventbrite can send me emails about the best events happening nearby.

Users who opt of these check boxes, could reasonably believe that they are opting out of the Terms and Privacy Policy. At a minimum, it is unclear.

Service, including the arbitration provision contained therein, and therefore there was no mutual assent.

In circumstances such as this one where there is no mutual assent, the court is the proper forum for determining the threshold issue of arbitrability. Eventbrite's reliance on *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019), to assert that an arbitrator and not the court must decide the issue of arbitrability is misplaced. In *Schein*, the parties specifically and unequivocally assented to a contract that blocked arbitration of certain issues that encompassed the underlying claim. Mutual assent to the contract was not in dispute. The Supreme Court found "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract" and that the "parties may delegate threshold arbitrability questions to the arbitrator, **so long as the parties' agreement does so by "clear and unmistakable" evidence**. **To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists**." *Id.* at 529-530 (emphasis added). The court must determine the "gateway issue" of whether there is an agreement to arbitrate between the parties. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). Further, where a party challenges the existence of an arbitration agreement, "the presumption in favor of arbitrability does not apply." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014).

## IV. CONCLUSION

Based on the foregoing, this Court should deny Defendant's motion to compel arbitration.

Dated: September 14, 2020                **GUTRIDE SAFIER LLP**

/s/ Seth A. Safier /
Seth A. Safier
Marie A. McCrary
100 Pine Street, Suite 1250
San Francisco, California 94111

*Attorneys for Plaintiffs*