GUTRIDE SAFIER LLP
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
  todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SHERRI SNOW and LINDA CONNER, as individuals, on behalf of themselves, the general public and those similarly situated,<br><br>                Plaintiffs,<br><br>   v.<br><br>EVENTBRITE, INC.,<br><br>                Defendant. | Case No. 3:20-cv-03698-WHO<br><br>**Plaintiffs' Opposition to Defendant's Second Motion to Compel Arbitration**<br><br><br>Honorable William H. Orrick<br>Dept.: Courtroom 2, 17th Floor<br>Date: August 18, 2021<br>Time: 2:00 p.m. |

# Table of Contents

**A.    THE COURT'S DENIAL OF EVENTBRITE'S FIRST MOTION TO COMPEL ARBITRATION 3**

B.    Eventbrite's Attempt to Supplement the Record ...................................... 5

C.    Eventbrite's Refusal to Produce Discovery Regarding Mr. Popoff's Declaration, and Plaintiffs' Motion to Compel ....................................... 6

D.    Eventbrite's Discovery Delays and Failure to Comply with the Court's Order .................................................................................................. 8

E.    Mr. Popoff's Deposition Confirmed that Eventbrite Failed to Produce the Files and Metadata Corresponding to the Terms of Service................... 10

<u>CASES</u>

*Abu-Lughod v. Calis*, No. CV 13-2972 DMG (RZx), 2015 U.S.
Dist. LEXIS 189550 (C.D. Cal. May 20, 2015) .................................................. 4

*Arizona v. California*, 460 U.S. 605 (1983)............................................................. 21

*Cullen v. Shutterfly Lifetouch, LLC*, No. 20-cv-06040-BLF, 2021
U.S. Dist. LEXIS 95440 (N.D. Cal. May 19, 2021) ...................................... 23

*In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155
(N.D. Cal. 2019)........................................................................................... 21

*Ingle v. Circuit City*, 408 F.3d 592 (9th Cir 2005); .............................................. 20

*Khasin v. R. C. Bigelow, Inc.*, No. 12-cv-02204-WHO, 2015 U.S.
Dist. LEXIS 126042 (N.D. Cal. Sep. 21, 2015).......................................... 21

*Lower Elwha Band of S'Klallams v. Lummi Indian Tribe*, 235 F.3d
443 (9th Cir. 2000).................................................................................... 20

Nguyen v. Barnes & Noble Inc., 763 F.3d 1171 (9th Cir. 2014).......................... 17

Nguyen v. Barnes & Noble Inc., 763 F.3d 1179 (9th Cir. 2014).......................... 23

*Norcia v. Samsung Telecomms. Am.*, LLC, 845 F.3d 1279 (9th Cir.
2017) ......................................................................................................... 16

*United States v. Houser*, 804 F.2d 565 (9th Cir. 1986) ...................................... 21

*United States v. Jingles*, 702 F.3d 494 (9th Cir. 2012)....................................... 20

**Introduction**

Defendant Eventbrite, Inc. ("Eventbrite") is an online ticket seller who refused to provide consumers with refunds for events that were canceled, postponed, or rescheduled following the COVID-19 outbreak. Plaintiffs filed suit.

In order to sidestep its legal obligation to refund consumers for event purchases, Eventbrite brought a motion to compel arbitration seeking to force Plaintiffs into individual arbitrations. This Court denied Eventbrite's motion, finding that it failed to carry its burden of proof. The Court first expressed concerns about Eventbrite's evidence of mutual assent, noting "[t]his motion turns on whether or not the plaintiffs were on inquiry notice based on online agreements. Yet the evidence Eventbrite offers does not demonstrate what versions of the sign-in wrap agreements the plaintiffs would have seen during the relevant time period." (Dkt. No. 22 at 7.) Despite stating in its motion that it conducted interviews with knowledgeable personnel and reviewed code, Eventbrite failed to produce design evidence of all the sign-in wraps Plaintiffs would have seen. (Dkt. No. 22 at 8.)

Eventbrite was also caught putting contradictory evidence before the Court. For example, it argued that a particular disclosure was seen by Plaintiff Conner that contained a "Continue with Apple" button, but then turned around and stated that such a button was *not* part of the disclaimer until months after the orders in the Complaint in response to Plaintiff's argument. (Dkt. No. 22 at 9.) The Court found: "[t]his issue is not peripheral; what precise webpages were viewed by the plaintiffs will determine whether or not they were on inquiry notice and, therefore, assented." (Dkt. No. 22 at 9.)

Eventbrite also misled the Court regarding the proximity of the "Place Order" button to the notice of the Terms on scrollable pages. (Dkt. No. 22 at 10.) The Court held, "Eventbrite bears the burden of proving by a preponderance of the evidence that each plaintiff assented—through being on inquiry notice—to the agreements. Eventbrite has not met that burden." (Dkt. No. 22 at 11.)

Eventbrite then filed a renewed motion "supplementing the record," claiming that it supplied "the very evidence the Court found lacking." (Dkt. No. 27 at 6.) Although it now admits, in various footnotes, that the actual design of at least three of its disclaimers is different from what it presented to the Court earlier, Eventbrite provided purported screen captures for some, but not all, of the disclaimer designs. (Dkt. No. 27 at 7-9, 14-19.) It also argues that since its previous motion, it filed an Answer and it is now a "judicially admitted and established fact" that Plaintiffs assented to the Terms because Eventbrite admitted a contract governed by the Terms was formed between it and Plaintiffs. (Dkt. No. 27 at 12.) Eventbrite is wrong about both the significance of its newly presented evidence and Plaintiffs' purported judicial admission.

Even after having been given two bites at the apple, Eventbrite still fails to carry its burden. In particular, Eventbrite has failed to adduce evidence sufficient to show what the contents of the Terms of Service were, at any relevant time. Indeed, despite being required to do so by Plaintiff's requests for production, and despite being ordered to do so by the Court, **Eventbrite still has not produced the Terms of Service files themselves, or any of the corresponding metadata.** Instead, Eventbrite relies entirely on unauthenticated Wayback Machine screenshots and unexplained exports from a Salesforce database—evidence that cannot carry Eventbrite's burden, especially given its repeated failure to produce the original files and metadata that underlie that evidence.

Finally, Plaintiffs' only so-called judicial admission with respect to the Terms relates to venue and choice of law, grounds for which the Ninth Circuit has already held are not sufficient to bind plaintiffs to an arbitration provision.

Eventbrite's second motion should be denied.

## Facts

### A. The Court's Denial of Eventbrite's First Motion to Compel Arbitration

On August 31, 2020, Eventbrite filed its first Motion to Compel Arbitration. (Dkt. No. 18.) In support of the motion, Eventbrite submitted various screenshots and other evidence regarding the disclosures that were allegedly shown to consumers who used the Eventbrite website.

This evidence included nine exhibits purporting to show various versions of the Terms of Service. (*See* Dacus Decl. (Dkt. No. 18), Exs. A–I.) Some of these exhibits appear to be printouts from the Wayback Machine, and other exhibits were purportedly files that had been exported from an Eventbrite Salesforce database long after the (named) Plaintiffs had used the Eventbrite service. (*Id*. ¶¶ 3.) Eventbrite, however, failed to provide the code (such as HTML code and JavaScript code) of the Terms of Use that the user's browser or mobile application would have used to render the pages in order to display them to the user. (Kennedy Decl. ¶ 8.) Eventbrite also failed to provide the file metadata that would have revealed, among other things, the creation and modification dates of the Terms of Service files. (Kennedy Decl. ¶ 11.)

In his declaration, Mr. Dacus said virtually nothing about Exhibits A–I, other than the fact that he was attaching them to his declaration. Mr. Dacus did not discuss any efforts taken by him or anyone else at Eventbrite to confirm that the Wikipedia printouts or Salesforce exports showed the Terms of Service that Plaintiffs (or other consumers) would have actually seen. Most significantly, Mr. Dacus did not attempt to address the issue that Exhibits A–I show versions of the Terms of Use that were too wide to be displayed on mobile devices. This is particularly troubling because Eventbrite has repeatedly stated that its website serves different versions for mobile web users, desktop web users, and mobile app users. (Dkt. No 18, at 5-9.) Mr. Dacus also did not address whether the Terms of Use

files contained or required JavaScript code, which is troubling because the operator of the Wayback Machine makes clear that "[w]hen a dynamic page contains forms, JavaScript, or other elements that require interaction with the originating host, the archive will not contain the original site's functionality." (https://help.archive.org/hc/en-us/articles/360004716091-Wayback-Machine-General-Information (last accessed 6/24/2021).) Further, Wayback pages must be authenticated to be judicially noticed. *See Abu-Lughod v. Calis*, No. CV 13-2972 DMG (RZx), 2015 U.S. Dist. LEXIS 189550, at *2 (C.D. Cal. May 20, 2015) (holding judicial notice is appropriate for the contents of web pages available through the Wayback Machine, so long as the webpages are authenticated by someone with personal knowledge of how the Wayback Machine creates an unaltered copy of a website as it appeared on a particular day.)

The Court denied Eventbrite's motion, albeit on different grounds. In its Order, the Court discussed several "concerns about Eventbrite's evidence of mutual consent." (Dkt. No. 22.) In particular, the Court discussed three primary concerns:

- "The evidence Eventbrite offers does not demonstrate what versions of the sign-in wrap agreements the plaintiffs would have seen during the relevant time period." (*Id.* at 7.)

- Eventbrite's evidence was self-contradictory. For example, Eventbrite submitted a screenshot containing a "Continue with Apple" button that was allegedly shown to Plaintiff Conner in 2019, but Eventbrite also alleged that the "Continue with Apple" button was not displayed to consumers until April 20, 2020. (*Id.* at 9.)

- Eventbrite attempted to mislead the Court. Specifically, Eventbrite argued that the Terms of Service notice was "located directly above the 'Place Order' . . . button," when in fact the page was designed to hide the Terms of Service notice unless the user scrolled to the bottom. (*Id.* at 10-11.)

With these concerns in mind, the Court found that Eventbrite had failed to carry its burden. With respect to Plaintiff Snow, the Court found that "Eventbrite has not shown what the pages would have looked like when Snow saw them." (*Id.* at 14.) With respect to

Plaintiff Connor, the Court found that Eventbrite failed to present evidence showing what she would have seen on the relevant date, **and** that even the screenshot Eventbrite submitted would not have put a reasonably prudent consumer on notice because it contained difficult-to-read gray text on a black background. (*Id*. at 17.)

### B. Eventbrite's Attempt to Supplement the Record

On November 16, 2020, Eventbrite filed a Second Motion to Compel Arbitration. (Dkt. No. 27.) Eventbrite argued that a second motion was justified because its personnel scattered across "three continents" made "extraordinary efforts" to finally obtain "the very evidence the Court previously found lacking." (*Id.* at 1.) Eventbrite also asserted that Plaintiffs' admitted that the Terms of Service governs this case, and that the Terms of Service require arbitration. (*Id.*)

But the Second Motion to Compel contradicts representations that Eventbrite made in its First Motion. In particular, Eventbrite admitted, in a footnote, that the screenshot of the Terms of Service disclaimer it had originally submitted to the Court (i.e., the version with the grey text on the black background) was incorrect, and that a user would have actually seen black and blue text on a white background. (*Id.* at 9 n.2.) In another footnote, Eventbrite admitted that "Eventbrite's Prior Motion incorrectly asserted that Ms. Snow completed a different checkout flow in placing the order over which she brings suit." (*Id.* at 9 n.3.) According to Eventbrite, in contradiction to its First Motion, Ms. Snow would have had to view the "Pay Now" button before submitting her order. (*Id*. at 15–16.) In yet another footnote correction, Eventbrite asserted that, in contradiction to what it represented in its First Motion, the "Continue with Apple" button would not have been shown to Ms. Conner during the sign-up process. (*Id.* at 13 n.5.)

Eventbrite asked the Court ignore its prior failings, and instead accept the new evidence. In so doing, Eventbrite relied almost entirely on the Declaration of Nick Popoff, its Director of Engineering, which Eventbrite cites over 50 times. (*Id.*) In his declaration,

Mr. Popoff asserts that Eventbrite was able to obtain from its third-party vendor, Rainforest, videos showing how the checkout flow appeared during a test order that Rainforest allegedly placed on January 8, 2020. (Dkt. No. 27, Ex. 2 ¶¶ 47–50.) The videos, however, do not contain the Terms of Service themselves, so it is impossible to tell from the videos what the Terms of Use stated. (*Id.*, Exs. G, E, K.)

**C. Eventbrite's Refusal to Produce Discovery Regarding Mr. Popoff's Declaration, and Plaintiffs' Motion to Compel**

After reviewing Eventbrite's Second Motion and Mr. Popoff's declaration, Plaintiffs served a limited set of discovery requests. The requests were narrowly focused, and included only eight requests for production, three interrogatories, and a deposition notice of Mr. Popoff. (*See* Kennedy Decl. Exs. B & C) Most significantly, the Requests for Production required the following:

> 1. The KEY SIGNUP SOFTWARE FILES for the KEY SIGNUP DATES. (If YOU do not have one or more such files for one or more such dates in YOUR possession, custody, or control, YOU shall produce the KEY SIGNUP SOFTWARE FILE that is closest in time to the date in question.)

> 2. The KEY CHECKOUT SOFTWARE FILES for the KEY CHECKOUT DATES. (If YOU do not have one or more such files for one or more such dates in YOUR possession, custody, or control, YOU shall produce the KEY CHECKOUT SOFTWARE FILE that is closest in time to the date in question.)

(Kennedy Decl. Ex. B at 8.) The requests were clear that Plaintiffs sought production of the *files* that, among other things, were involved in displaying the ***Terms of Service***. The operative terms were defined as follows:

> The term "KEY CHECKOUT SOFTWARE FILES" shall mean the .html files (or equivalent), the .css files (or equivalent), the client-side javascript files (or equivalent), and the templating files (or equivalent) involved in rendering or displaying the Desktop Web and Mobile Web checkout flows ***and related Terms of Service*** displayed during DEFENDANT'S checkout

process.

> The term "KEY SIGNUP SOFTWARE FILES" shall mean the .html files (or equivalent), the .css files (or equivalent), the client-side javascript files (or equivalent), and the templating files (or equivalent) involved in rendering or displaying the Desktop Web and Mobile Web signup flows **and related Terms of Service** displayed during DEFENDANT'S signup process.

(*Id.* at 6.) The requests also made clear that Eventbrite was to produce these files "in their native electronic format together with all metadata and other information associated with each document in its native electronic format." (*Id.* at 4.)

Eventbrite's January 15, 2021 response to the discovery was both sloppy and incomplete. Although Eventbrite produced thousands of files—the vast majority of which were entirely irrelevant to this case—it failed to preserve any of the file creation or modification dates, and further failed to provide Plaintiffs with any metadata regarding those dates. (*See* Dkt. No. 42 at 1–3.) Instead, the produced files all had incorrect dates of December 2020 and January 2021—the dates on which Defendant prepared the files for production. (*Id.*) Accordingly, Plaintiffs had no way of telling how old the files were. (*See id.*) This was important, because the primary issue before the Court—and the very issue that Mr. Popoff focused on in his declaration—is what Plaintiffs saw on Eventbrite's website on the dates in question when they visited the website. Without the date metadata, it was impossible to tell whether the files are relevant—i.e., what Plaintiffs saw.

In addition, Eventbrite failed to produce the templating files that were responsible for rendering the pages at issue. These files are critical because, without them, Plaintiffs had no way of telling what webpages may have been loaded when Plaintiffs visited the site, or what website addresses corresponded with any of the thousands of .html files that Eventbrite produced.

Because Eventbrite's production was useless without these essential information and documents, Plaintiffs were unable to complete their review of the code. (Kennedy Decl. ¶ 5.) Instead, Plaintiffs' counsel met and conferred with Eventbrite's counsel, and requested that Eventbrite respond fully to the discovery. (*Id.*) Eventbrite refused, and subsequently the parties filed a discovery letter. (*See* Dkt. No. 42.)

After considering the discovery letter, the Court on February 22, 2021 ordered Eventbrite to respond to the discovery. (*See* Dkt. No. 43 at 2.) The Court observed:

> I denied the first motion to compel because Eventbrite failed to establish what agreements the plaintiffs would have seen; it had provided agreements from different time periods. The dates that these files were made and modified are material to the issue of what agreements existed when.

(*Id.* at 1.) Accordingly, the Court ordered: "Eventbrite shall produce the requested templating files for the 14 dates previously identified in the production requests and shall produce the dates on which the other files at issue were created or modified, and related metadata." (*Id.* at 2.)

**D. Eventbrite's Discovery Delays and Failure to Comply with the Court's Order**

Following the Court's order, counsel for the parties met and conferred regarding the scope and production dates for the document production. (Kennedy Decl. ¶ 6.) After the conversation, Plaintiffs' counsel memorialized the parties' agreements in a March 14 email, including the following: "As for (i), I explained that Plaintiffs expect, at a minimum, the Python (.py) files involved in the Django platform, particularly the ones that map url endpoints to the client-site .html files. ***I also explained that if there are other platforms or programming languages besides Django/Python, Plaintiffs expect for those to be produced as well.***" (Kennedy Decl. Ex. D.) Plaintiffs' counsel also stated that Plaintiffs expected Eventbrite to produce the metadata for these files, including the "correct file creation and

modification dates." (*Id.*) Eventbrite's counsel replied to the email and did not take issue with this agreement. (*Id.*)

On March 30, the parties filed a stipulation stating that Eventbrite would produce the required documents by April 16; that the deposition of Mr. Popoff would occur on May 17; and that the present opposition would be due June 16. (Dkt. No. 46.) The Court ordered that the stipulation be effective. (Dkt. No. 47.)

On April 12, Eventbrite's counsel informed Plaintiffs' counsel that "[w]e hope to have the collection completed and files produced to you by April 23, but at this point we are unsure exactly when we'll complete the process." (Kennedy Decl. Ex. D.) On April 21, Eventbrite made a production of files. (Kennedy Decl. ¶ 9.) The parties then agreed that the deposition of Mr. Popoff would take place on May 13. (Kennedy Decl. ¶ 10.)

On May 10—three days before the deposition was to take place—Eventbrite's counsel informed Plaintiffs' counsel in an email that "we realized today that one source code branch was inadvertently omitted from our prior production." (Kennedy Decl. ¶ 15) Concurrently, Eventbrite made another large document production. (*See id.*)

The next day, on May 11, Eventbrite's counsel sent another email to Plaintiff's counsel, stating:

> In the course of preparing for Thursday's deposition, Eventbrite discovered that a set of responsive files was omitted from the scope of its prior source code collection and production. We are working to have our vendor collect these files and will produce them to you as quickly as possible. We are optimistic that this will be a matter of days and will let you know the anticipated delivery date as soon as we have that information from our vendor.

(Kennedy Decl. Ex. F.) Due to these numerous production delays, the parties had to cancel the deposition of Mr. Popoff, and rescheduled it for June 3. (Kennedy Decl. ¶ 14.)

On May 25, Eventbrite made its final production of documents. (Kennedy Decl. ¶ 16.) The production was much larger than expected, and Plaintiffs' counsel was unable to finish reviewing the documents until the evening before Mr. Popoff's June 3 deposition. (*Id.*)

Going into the deposition, Plaintiffs' counsel was troubled that he had been unable to locate any of the files underlying the Terms of Service. (*Id.*) It seemed that not only had Eventbrite failed to produce the file creation and modification metadata as ordered by the Court, but that Eventbrite had entirely failed to even produce the files themselves. (*Id.*) As discussed below, Mr. Popoff's deposition confirmed that these suspicions were correct.

**E. Mr. Popoff's Deposition Confirmed that Eventbrite Failed to Produce the Files and Metadata Corresponding to the Terms of Service.**

During his deposition, Mr. Popoff was asked several questions regarding the Terms of Service disclosures that Eventbrite allegedly showed to Plaintiffs and other consumers. Unfortunately, Mr. Popoff was unusually evasive in his answers to basic questions regarding (i) how users can access the Terms of Service; (ii) what the user's browser does to display the Terms of Service; and (iii) where the Terms of Service is stored. In his brief testimony regarding the Terms of Service, Mr. Popoff answered with phrases like "I don't understand your question" ***fifteen times***:













[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

(Kennedy Decl., Ex. A 37:15-45:4 (emphasis added).)

Plaintiffs' counsel decided to allow the parties to break from the deposition, in order to give Mr. Popoff and his counsel an opportunity to discuss how to locate the Terms of Service. (Kennedy Decl. ¶ 17.) After the break, Eventbrite's counsel confirmed that Eventbrite had not produced any files associated with the Terms of Service, because all file collection had been done from Eventbrite's archives, whereas the Terms of Service were stored on a third party repository. (*Id.* ¶ 18.)

[redacted]

Without the benefit of having the files underlying the Terms of Service, and with Mr. Popoff being so evasive and obtuse throughout the entire deposition,[1]

---

[1] [redacted]

counsel for Plaintiffs decided to terminate the deposition early. (Kennedy Decl., Ex. A 53:23-55:11.)

Following the deposition, Plaintiffs' counsel did an additional comprehensive search of the code that Eventbrite produced and confirmed that it did not contain the Terms of Service files or the corresponding metadata, as required by the Requests for Production and the Court's Order. (Kennedy Decl. ¶ 19.)

To this day, Eventbrite still has not produced the Terms of Service files, or any of the corresponding metadata. (*Id.* ¶ 20.)

## Argument

### I. Eventbrite has failed to show what Terms of Service disclosures applied to the transactions at issue.

#### A. Eventbrite bears the burden of proof.

As the Court observed in its Order denying Eventbrite's first motion to compel, "Eventbrite, the party seeking to compel arbitration, 'bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence.'" (Dkt. No. 22 at 6 (quoting *Norcia v. Samsung Telecomms. Am.*, LLC, 845 F.3d 1279, 1283 (9th Cir. 2017).) This Court went on to note, "***Eventbrite would only be able to carry its burden if it could show what the agreements looked like during the period when the plaintiffs would have actually seen them.***" (Dkt. No. 22 at 9 (emphasis added).)

By its own admission, Eventbrite cannot meet its burden of proof. Eventbrite states in its renewed motion to compel arbitration that despite its exhaustive efforts, its engineers "have confirmed it is impossible to reliably recreate from scratch the specific disclosures displayed to Plaintiffs at the times they created their accounts, signed in, and/or placed their orders." (Dkt. No. 27 at 12.) Instead, it cites to unspecified logs, records, and code overseen

by declarant Nick Popoff to support its assertions of what Plaintiffs saw on particular dates.

As a result, Eventbrite has not, and cannot, meet the requisite burden of proof.

**B. By failing to produce the original Terms of Service files and metadata, Eventbrite cannot show what terms applied, or how they appeared to consumers.**

    **1. The original files and metadata are critical to showing what Terms of Use applied, and how they were shown to consumers.**

Whether a particular website has provided inquiry notice of the terms is a fact-intensive inquiry that "depends on the design and content of the website and the agreement's webpage." Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1177 (9th Cir. 2014). As this Court noted in its Order on the parties' discovery dispute, metadata and source files are material to the issue of establishing what agreements existed at certain points in time. (Dkt. No. 43 at 1.) Without this data, Eventbrite's assertions remain untested.

Eventbrite relies on the Declaration of Antwonne Dacus and attached exhibits to establish the contents of the Terms of Service across various dates. (Dacus Decl. ¶2.) However, all of these documents other than the most current Terms are comprised of unauthenticated printouts from the Wayback Machine or exports from a Salesforce database. (Dacus Decl. ¶¶3-4.)

There are multiple reasons why the Dacus exhibits are ***not*** a substitute for producing the original Terms of Use files and underlying metadata. First, the Wayback Machine exhibits were obviously captured by an unspecified desktop computer, as the width of the page is far

too wide to be displayed on mobile devices. Accordingly, without seeing the original files, there is no way of knowing how the Terms would have appeared to users across multiple formats, such as mobile devices. As for the Salesforce exhibits, they state at the top that they are "exports," but there is no explanation regarding what that means, or how an "export" corresponds to the actual file that a user's browser would have loaded. Without the original Salesforce files and underlying metadata, it is anyone's guess what the actual Terms of Use would have looked like to a user. Further, the Dacus Salesforce exhibits have the same problem as the Wayback machine exhibits—they are too wide to be displayed on a mobile device, and there is no explanation or even assertion regarding how the Terms would have appeared to a mobile device user. Accordingly, one would need to review the original Terms of Use files themselves and the underlying metadata to understand what a user would have seen at any particular time, on any particular device.

### 2. Eventbrite has no excuse for its failure to produce the Terms of Service files and metadata.

This Court has already considered and rejected Eventbrite's previous attempt to withhold metadata and files critical to rendering its site, thus Eventbrite's lack of compliance with the Court's Order is without excuse. The Court stated:

> Eventbrite's only real argument on materiality is that its witness has stated that the files contain the computer code in effect at the right time. ***But that is the very fact that the plaintiffs seek to establish or undermine with this discovery.*** Eventbrite has not identified with particularity the burden on it from this work and has not offered a good reason why its initial production failed to include dates (especially given the history of this case).

(Dkt. No. 43 at 2.)

Although Eventbrite continued to make ongoing productions of various files and metadata, the most critical files—the HTML, templating files, and metadata corresponding to the actual Terms of Service—were never produced. And Eventbrite certainly did not compensate for this failure during the Popoff

deposition. As noted in the Statement of Facts above, he was evasive at every turn—even to the point of pretending that he did not understand what it means for a file to be "stored"—and had no knowledge about the Salesforce repository, where the Terms of Service were purportedly kept.

Eventbrite's failure to abide by its discovery obligations is particularly troubling in light of its contradictions and about-faces with respect to what disclosures the Plaintiffs saw when using its website. In its first motion to compel arbitration, Eventbrite stated unequivocally that "Plaintiff Snow was shown the below disclosure," on February 11, 2020, followed by a screen capture and a citation to an allegedly supporting declaration by employee Courtney Duhring. (Dkt. No. 18 at 17.) In its second motion, Eventbrite admits that its representation was false, and supplies a new image of the checkout flow. (Dkt. No. 27 at 14n.3.) Eventbrite does the same thing for Plaintiff Connor, claiming that she, too, saw something different from what it had claimed in its first motion. (*Compare* Dkt. No. 18 at 19 *with* Dkt. No. 27 at 18.)

Given its multiple failures to provide the Court with accurate representations, as well as its repeated discovery failures despite the Court's Order, Eventbrite's failure to produce the Terms of Service files and metadata cannot be excused.

## II. The Court should reject Eventbrite's argument that there was a "Judicial Admission" to arbitrate the case.

Eventbrite tries to entirely sidestep the issue of what its website showed to consumers, by claiming that Plaintiffs have made the "judicial admission" that they agreed to binding arbitration. According to Eventbrite, it is "undisputed that at all times relevant to Plaintiffs' claims, Eventbrite's Terms of Service have required that all disputes relating to Eventbrite's services or the relationship

between Eventbrite and its users be submitted to mandatory arbitration," (Dkt. No. 27 at 7).

As an initial matter, the Court should reject the argument because Eventbrite waived it by not raising it in its first motion. Further, Eventbrite is incorrect—Plaintiffs have never admitted that they agreed to binding arbitration, or even that the Terms of Use on Eventbrite's website at any particular time contained an arbitration clause. Rather, Plaintiffs have always maintained that Eventbrite bears the burden with respect to these issues.

## A. The Court should not consider the argument because Eventbrite waived it.

Eventbrite waived its "judicial admission" argument by not presenting it in its first motion to compel. By asserting the argument now, Eventbrite seeks a "second bite at the apple" with respect to a motion it lost; a practice that courts almost universally condemn. *See United States v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012); *Ingle v. Circuit City*, 408 F.3d 592, 594 (9th Cir 2005); *Lower Elwha Band of S'Klallams v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000); *United States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986). Courts do so for good reason. Allowing a party to bring serial motions seeking the same relief disincentives that party to put forth its best position the first time around, which in turn precipitates an inordinate waste of judicial time and resources and interferes with *res judicata* rules governing the law of the case. *See Arizona v. California*, 460 U.S. 605, 618 (1983); *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1163 (N.D. Cal. 2019); 18B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4478, at 637-38 (2002). Likewise, all of the so-called supplementary evidence Eventbrite presents could have previously been obtained.

This District's local rules have a procedure for a party to seek reconsideration of a Court's order, and it spells out the conditions for being able to do so. *See* FRCP Rule 59(e)

and Civil L.R. 7-9(b) (requiring an intervening change in the law; additional evidence that was not previously available to Defendant with due diligence; and/or evidence of clear error or injustice.); *see also Khasin v. R. C. Bigelow, Inc.*, No. 12-cv-02204-WHO, 2015 U.S. Dist. LEXIS 126042, at *1-2 (N.D. Cal. Sep. 21, 2015) (denying request for leave to file motion for reconsideration). Defendant's failure to exercise due diligence in presenting evidence sufficient to meet its burden as the movant in support of its original motion is not proper grounds for asking the Court to reconsider its Order denying arbitration. Neither the allegations in Plaintiffs' complaint, Defendant's admissions in its answer, or any additional technical and visual data Defendant could be gathering would constitute evidence that was not previously available to Defendant under the applicable rules.

**B. Plaintiffs have never admitted that they agreed to a Terms of Service with an arbitration clause.**

Even if the Court considers Eventbrite's argument, it should reject it. Plaintiffs have never stipulated that they are required to arbitrate this dispute. Instead, Plaintiffs' position has always been that Eventbrite must prove that the parties agreed to arbitrate the dispute, by providing the original files and metadata corresponding to the Terms of Service.

Eventbrite relies on Plaintiffs' mention of the TOU in the section of the Complaint entitled "JURISDICTION, VENUE, APPLICABLE LAW." (Dkt. No. 1 at ¶¶ 12-20.) Within that section, Plaintiffs invoke the TOU to establish that venue/jurisdiction is proper in this Court—for the very reason that this case is not susceptible to arbitration. (Id., ¶ 16 (stating "any legal action against Eventbrite…that is not precluded by the arbitration provisions in these Terms must be filed and take place in San Francisco" and "for any actions not subject to arbitration, you and Eventbrite agree to submit to the personal jurisdiction of the federal or state courts (as applicable) located in San Francisco County, California.") Finally, Plaintiffs invoked the Terms to establish Defendant's choice

1    of law. (Id., ¶ 18 ("These Terms are governed by the laws of the State of

2    California, without regard to its conflict of laws rules. These laws will apply no

3    matter where in the world you live.").

4         Plaintiffs' reference to the Terms of Service in their Complaint relates only to

5    venue and choice of law; it does not require arbitration. The Ninth Circuit has

6    held that such references are insufficient to bind a plaintiff to an arbitration

7    agreement. *See* Nguyen v. Barnes & Noble Inc., 763 F.3d 1179-1180 (9th Cir.

8    2014) (rejecting defendant's "argument that Nguyen should be equitably estopped

9    from avoiding arbitration because he ratified the Terms of Use by relying on its

10   choice of law provision in his complaint"). Plaintiffs' mention of the Terms in

11   their Complaint relates only to the venue and choice of law portion of the Terms.

12   (Dkt. No. 1 at ¶¶ 16-18.)

13        In a recent case on point, the defendants similarly argued that the plaintiff was equitably

14   estopped from contesting the arbitration provision merely because the complaint relied on

15   choice of law and forum selection provisions in the Terms of Use. *See Cullen v. Shutterfly*

16   *Lifetouch, LLC*, No. 20-cv-06040-BLF, 2021 U.S. Dist. LEXIS 95440, at *18-21 (N.D. Cal.

17   May 19, 2021). The court disagreed. Citing *Nguyen*, the court found that plaintiff is not the

18   type of non-signatory contemplated by the equitable estoppel rule, and that the complaint's

19   reliance on choice-of-law and forum selection provisions chosen unilaterally by Lifetouch

20   did not confer a direct benefit on plaintiff sufficient to render the arbitration provision

21   applicable to him under an equitable estoppel. *Id*., at *18-21.

22        The same is true here. Like the provisions at issue in *Cullen*, the provisions cited by the

23   Complaint in this case were unilaterally selected by Eventbrite and none conferred any

24   benefit on Plaintiffs. Eventbrite's only possible argument is that Plaintiffs relied on the

25   Terms to support their breach of contract claim, but a closer reading of that claim establishes

26

that Plaintiffs seek, pursuant to Civil Code § 1689(b), to rescind the agreements and contracts. (Dkt. No. 1, ¶ 59.) Accordingly, there is no estoppel here.

Finally, even assuming for the sake of argument that Plaintiffs admitted that they agreed to *some* arbitration clause, Eventbrite cannot avoid the real issue: it has failed to show ***what*** the arbitration clause actually stated, or how it would have appeared to a consumer, at any particular time, on any particular device. Ultimately, Eventbrite cannot avoid its repeated contradictions and critical discovery failures, even if the Court is inclined to consider its "judicial admission" argument. Eventbrite has failed to meet its burden of proof with respect to arbitration.

## Conclusion

For the reasons stated above, Plaintiffs request that Defendant's Second Motion to Compel Arbitration be denied.

Respectfully submitted,

Dated: June 30, 2021      **GUTRIDE SAFIER LLP**

/s/ Seth A. Safier /s/
Attorneys for Plaintiffs