SINGER CASHMAN LLP
  Adam S. Cashman (Bar No. 255063)
  acashman@singercashman.com
  Doug Tilley (Bar No. 265997)
  dtilley@singercashman.com
505 Montgomery Street, Suite 1100
San Francisco, California 94111
Telephone:    (415) 500-6080
Facsimile:    (415) 500-6080

*Attorneys for Eventbrite, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SHERRI SNOW, ANTHONY PICENO and LINDA CONNER, as individuals, on behalf of themselves, the general public and those similarly situated,<br><br>  Plaintiffs,<br><br>  v.<br><br>EVENTBRITE, INC.,<br><br>  Defendant. | CASE NO. 3:20-cv-03698-WHO<br><br>**DEFENDANT EVENTBRITE, INC.'S REPLY MEMORANDUM IN SUPPORT OF SECOND MOTION TO COMPEL ARBITRATION**<br><br>Hearing Date: August 18, 2021<br>Hearing Time: 2:00 p.m.<br>Courtroom 2, 17th Floor |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................................1

II.  UNDISPUTED FACTS AND LAW REQUIRE INDIVIDUAL ARBITRATION ..................3

   A. Plaintiffs' Admission That They Agreed To The TOS Is Dispositive .......................3

      1. It Is Judicially Established That Plaintiffs Agreed To The TOS .........................4

      2. By Admitting They Agreed To The TOS, Plaintiffs Admit They Agreed To Its Arbitration Provision ..............................................................................................4

      3. Plaintiffs' Efforts to Avoid Their Admission Fail................................................5

   B. Plaintiffs May Not Avoid The TOS By Accusing Eventbrite Of "Failing" To Comply With Non-Existent Discovery Obligations................................................................7

      1. The Parties Agreed That Eventbrite Would Only Produce Certain Files Relating To Its Checkout Flows, Not The Separate TOS Pages To Which Those Flows Link.........8

      2. Plaintiffs Did Not Move To Compel Files Relating To The TOS Pages, And The Court Did Not Order Their Production...............................................................10

      3. Plaintiffs' Characterizations Of Mr. Popoff's Testimony Are Incorrect, Inappropriate, And Irrelevant To The Issues Before The Court........................12

      4. Plaintiffs' Lack Of Entitlement Notwithstanding, Eventbrite Produced All Files Showing The Content Of, And Involved In Displaying Or Rendering, The TOS ............14

III. CONCLUSION..................................................................................................................14

# TABLE OF AUTHORITIES

**CASES**

*Cullen v. Shutterfly Lifetouch, LLC*,
 No. 5:20-cv-06040, Dkt. No. 58 (N.D. Cal. May 21, 2021) ...................................................... 6

*Dillon v. BMO Harris Bank, N.A.*,
 787 F.3d 707 (4th Cir. 2015) ................................................................................................. 3, 7

*In re First Am. Fin. Corp.*,
 No. SACV 19-1105 DSF (Ex), 2020 WL 7051087 (C.D. Cal. Aug. 11, 2020) .......................... 4

*Khath v. Midland Funding, LLC*,
 334 F. Supp. 3d 499 (D. Mass. 2018) .................................................................................... 3, 7

*Maxit Designs, Inc. v. Coville, Inc.*,
 No. 05-cv-1040, 2006 WL 2734366 (E.D. Cal. Sept. 25, 2006) ............................................... 3

*Nguyen v. Barnes & Noble Inc.*,
 763 F.3d 1171 (9th Cir. 2014) ................................................................................................... 6

*U.S. v. Houser*,
 804 F.2d 565 (9th Cir. 1986) ..................................................................................................... 3

**STATUTES**

Cal. Civ. Code § 1589 ................................................................................................................. 4, 6

Cal. Civ. Code § 1689(b) ................................................................................................................ 7

**RULES**

Fed. R. Civ. P. 15(a)(1)(B) ............................................................................................................. 3

## I. INTRODUCTION

Eventbrite's Motion presents a single question: whether the evidence sufficiently establishes the checkout flows the two remaining named plaintiffs completed in placing the orders alleged in their Complaint. All other issues have already been adjudicated. The Court has already determined, for example, that Eventbrite's "sign-in wrap" checkout flows are sufficient to provide inquiry notice of Eventbrite's Terms of Service ("TOS"). Dkt. No. 22 ("Order") at, *e.g.*, 12-13 ("If this sign-in wrap agreement is what Snow truly saw, it is sufficient to put her on notice."). The Court also has already established the terms of the relevant version of the TOS and found they require arbitration of the claims asserted here. *See id.* at 2-4. The answer to the remaining question is undisputedly yes.

As an initial matter, Plaintiffs have judicially admitted that they ***actually*** agreed to the relevant version of the TOS, so the issue of inquiry notice is beside the point. But even there, Eventbrite responded to the Court's previous findings regarding the evidentiary record by producing screenshots and videos showing the precise checkout flows Plaintiffs completed, which are the same flows this Court previously approved as sufficient to confer inquiry notice and thus bind users to Eventbrite's TOS. Order at 12-14. Eventbrite also produced the full scope of evidence upon which its Motion relies, including thousands of source code files, web development scripts, and internal company logs, as well as a full working copy of an archived version of Eventbrite's mobile app. Eventbrite also produced its Director of Engineering for examination concerning that evidence.

Having had every opportunity to examine and test Eventbrite's evidence, ***Plaintiffs do not challenge any of it***. They similarly do not attempt to refute ***any*** of Eventbrite's authorities from the Ninth Circuit, this District, and elsewhere holding that substantially identical disclosures adequately confer inquiry notice of website terms, including those requiring arbitration. They do not assert that the Court erred in applying those authorities when it previously concluded that Eventbrite's sign-in wrap agreements are sufficient as a matter of law to bind Plaintiffs to the TOS. *See* Order at 12-14. In other words, Plaintiffs do not contest that the facts or the law are exactly as set forth by Eventbrite.

Plaintiffs claim instead that Eventbrite failed to prove up the appearance and content of the relevant versions of its TOS. But the Court already adjudicated this. It determined, based on "sworn" evidence that "plaintiffs d[id] not dispute[,]" that Exhibit I to the August 31, 2020

Declaration of Antwonne Dacus (Dkt. 18-4 at ECF pp. 235-48, "Exhibit I") depicted the TOS in effect "during the pertinent time period" and contained the applicable arbitration provisions. Order at 2-4. Plaintiffs provide no grounds to ignore or vacate the Court's prior finding. Indeed, they do not mention it at all.

Rather, Plaintiffs attempt to divert by claiming that Eventbrite's sworn, undisputed screenshot evidence should not be credited because Eventbrite did not *also* produce the software files containing the code responsible for displaying the web page depicted. This misdirection fails. No applicable rule or legal standard requires production of source code files to confirm the appearance of webpages that have already been properly authenticated, tendered into the evidentiary record, and adopted by the Court without objection. Order at 2-4. Nor is it clear where Plaintiffs' purported "standard" would end, for imaginative counsel can always conjure up yet another set of questions and evidence it would wish to see regarding a given issue—including, as here, well after the fact.

Plaintiffs cannot persuasively claim that the Court ordered production of the TOS-specific software files they now claim are needed to confirm what has already been established. Their assertion relies on their original RFPs, which sought production of files relating to the "the Desktop Web and Mobile Web checkout flows" Plaintiffs completed and "the related Terms of Service[.]" But Plaintiffs omit any mention of what happened subsequently, including their written agreement that Eventbrite would produce *only* enumerated file types involved in the display and rendering of "the Desktop Web checkout Ms. Snow completed" and "the Mobile Web checkout Ms. Conner completed" on the dates at issue. Declaration of Doug Tilley ("Tilley Decl."), Exh. B at 1. That the parties agreed to narrow the scope of Plaintiffs' RFPs to the sole issue presented by Eventbrite's Motion—whether the evidence confirms which checkout flows Plaintiffs completed—was neither an accident nor a miscommunication. Indeed, in the many months between that agreement and the filing of their Opposition, Plaintiffs never insisted that Eventbrite produce files supporting the content or display of the separate TOS webpage to which the checkout flows linked—and with good reason, as the appearance of the TOS webpage had never been challenged and was already established by the Court's prior Order.

1    In any event, after learning through Plaintiffs' Opposition that they desired to review still more evidence, Eventbrite collected and produced all files involved in the display or rendering of the page displaying the relevant iteration of the TOS. Those files further confirm what the Court already determined, that Exhibit I depicts the TOS in effect "during the pertinent period[.]" Plaintiffs notably have not indicated otherwise since receiving those files on July 13.

That should be the end of this matter. Plaintiffs have raised no other objections and have provided no other reason to question the record demonstrating that Eventbrite's checkout flows were sufficient to confer inquiry notice. Under applicable law, Plaintiffs' claims must be compelled to proceed in arbitration.

## II. UNDISPUTED FACTS AND LAW REQUIRE INDIVIDUAL ARBITRATION[1]

### A. Plaintiffs' Admission That They Agreed To The TOS Is Dispositive

Eventbrite's Motion must be granted because the operative facts and law establishing the existence and sufficiency of Eventbrite's "sign-in wrap agreements" are undisputed. But the Court need not reach even those issues because Plaintiffs have already admitted, as a necessary element of their affirmative claims, that they agreed to and are bound by the TOS—a contract that requires their claims to be resolved exclusively through mandatory individual arbitration.

---

[1] Plaintiffs' contentions that Eventbrite's Motion should be treated as one for reconsideration or an otherwise improper "second bite at the apple" lack merit. *See* Opp. at 20-21. The Court can and should adjudicate Eventbrite's Motion on the merits, upon a full evidentiary record. *See, e.g.*, *Dillon v. BMO Harris Bank, N.A.*, 787 F.3d 707, 715 (4th Cir. 2015) (reversing denial of renewed motion to compel as one seeking reconsideration where defendants "attempted to cure the evidentiary deficiencies the court relied on and asked the court to determine whether Dillon actually agreed to submit his claims to arbitration."); *Khath v. Midland Funding, LLC*, 334 F. Supp. 3d 499, 510 (D. Mass. 2018) (affirming magistrate's refusal to consider renewed motion as one for reconsideration and instead considering further evidence where prior order "denied Midland's first Motion to Compel Arbitration without prejudice, providing Midland the opportunity to present more evidence concerning the assignments issue."); *Maxit Designs, Inc. v. Coville, Inc.,* No. 05-cv-1040, 2006 WL 2734366 (E.D. Cal. Sept. 25, 2006) (granting second motion to compel where defendant provided evidence the Court identified in prior order as necessary but absent); Tilley Decl., Exh. A (11/17/20 CMC Tr.) at 3:6-5:4 (the Court's prior Order "identif[ied] discrete pieces of information that may well be in the possession of the defendants and wasn't provide …. I'm giving the defendants the chance to present a fuller record[.]"). Plaintiffs' authorities are beside the point. *See, e.g*, *U.S. v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986) (noting the law-of-the-case doctrine is limited to questions of law (rather than of fact or evidence) and is in any event "discretionary, not mandatory.").

### 1. It Is Judicially Established That Plaintiffs Agreed To The TOS

In their Complaint, Plaintiffs alleged as a necessary element of their first cause of action that "[t]he contract that governs the transactions at issue in this case includes the Terms of Service Agreement[.]" Compl., ¶ 54. In answering that allegation following the Court's denial of Eventbrite's prior motion, Eventbrite "[a]dmitted that Eventbrite's 'Terms of Service Agreement' 'governs the transactions at issue in this case[.]'" Dkt. No. 25, ¶ 54. Plaintiffs elected not to amend their allegation, as they could have done as a matter of right under Fed. R. Civ. P. 15(a)(1)(B). Thus, since the time of Eventbrite's prior Motion, Plaintiffs' acknowledged accession to the TOS converted from a mere allegation, subject to amendment at any time, to an admitted, judicially-established fact.

### 2. By Admitting They Agreed To The TOS, Plaintiffs Admit They Agreed To Its Arbitration Provision

As a matter of law, a party may not "expressly acknowledge the existence of binding contracts as a premise of their claims" then "pick and choose what they want to enforce from those contracts." *In re First Am. Fin. Corp.*, No. SACV 19-1105 DSF (Ex), 2020 WL 7051087, at *2 (C.D. Cal. Aug. 11, 2020) (compelling arbitration because "[t]he FAC directly invokes contracts that contain arbitration provisions."); *see also* Civ. C. § 1589 ("A voluntary acceptance of the benefit of a transaction"—such as the admitted use of Eventbrite's services pursuant to the TOS to purchase credentials to third-party events—"is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting."). Thus, where a plaintiff's pleading "directly invokes contracts that contain arbitration provisions[,]" the plaintiff is deemed to have admitted her assent to such provision. *In re First Am. Fin. Corp.*, 2020 WL 7051087, at *1.

Here, the Court has already determined which version of Eventbrite's TOS was in effect at the time of Plaintiffs' orders, and that that contract provides for mandatory individual arbitration of claims such as those asserted here. *See* Order at 2-4. Specifically, in support of its prior motion to compel arbitration, Eventbrite submitted a screenshot from www.eventbrite.com/support showing the version of the TOS in effect throughout the entirety of the relevant period. *See* Exhibit I; Dkt. No. 18-3, ¶ 2 (8/31/2020 Declaration from Antwonne Dacus, Eventbrite's Content Manager, attesting under oath that Exhibit I is a "true and correct cop[y] of Eventbrite's Terms of Service … in effect

from … March 11, 2019 through the date of this Declaration[.]").² Plaintiffs did not dispute the authenticity or accuracy of that screenshot in any way, presumably because they had visited the URL and confirmed that Eventbrite's Exhibit I was indeed a true and correct copy of the then-effective TOS.³ The Court accepted Mr. Dacus's sworn attestation, based in part on Plaintiffs' tacit agreement that it was what Eventbrite said it was, and determined that Exhibit I depicted the relevant version of the TOS and its arbitration provisions. *See* Order at 2-4.

Plaintiffs' focus on purported inconsistencies in the prior factual record miss the point. Those issues are ancillary to the specific transactions at issue and the evidence regarding them, and are unrelated to the Court's determination that Exhibit I depicts the relevant version of the TOS. Plaintiffs do not claim that that finding was incorrect in any respect (or mention it at all). They notably still do not challenge the evidentiary sufficiency of Exhibit I. Rather, Plaintiffs argue only (and erroneously) that Eventbrite's evidence of *older* TOS versions not at issue here is unreliable as "unauthenticated Wayback Machine screenshots" or "unexplained exports from a ▮▮▮ database[.]" Opp. at 2. This too is a diversion, as Plaintiffs acknowledge that Exhibit I is neither of those things. *See id.* at 17-18. They offer no basis to disturb the Court's prior finding. None exists.

### 3. Plaintiffs' Efforts to Avoid Their Admission Fail

Plaintiffs offer three unavailing arguments to avoid legal effect of their admission (confirmed in Eventbrite's Answer) that the TOS "governs the transactions at issue in this case[.]" Compl., ¶ 54.

***First***, Plaintiffs claim that they invoked the TOS solely for purposes of establishing jurisdiction and applicable law. *See* Opp. at 21-22. Not so. Plaintiffs expressly allege existence and

---

² Plaintiffs have never challenged that Mr. Dacus has firsthand knowledge sufficient to authenticate Exhibit I. Nor could they. Exhibit I itself reflects that it was updated by Mr. Dacus himself on March 11, 2019. *See* Dkt. No. 18-4 at ECF 235 ("Updated by Antwonne D."); *accord* Declaration of Antwonne Dacus in Further Support of Motion ("Dacus Reply Decl."), ¶¶ 9, 12.

³ Exhibit I remained the operative version of Eventbrite's TOS from March 2019 until September 28, 2020, two weeks ***after*** Plaintiffs submitted their prior Opposition. *See* Dacus Reply Decl., ¶¶ 9-10. Moreover, the TOS was identical in content and substantive formatting throughout that period, irrespective of the device on which a user viewed the TOS. *See id.* at ¶¶ 3-4; *see also* Declaration of Chase Hamby ("Hamby Decl."), ¶ 13 (Eventbrite's Salesforce Developer confirming, based on firsthand knowledge of the files provided to Plaintiffs, that Exhibit I accurately depicts the relevant version of the TOS).

enforceability of the TOS as a necessary element of their claim for breach of contract. *See* Compl., ¶ 54. Having pleaded their accession to the TOS and received the benefit of Eventbrite's services pursuant to the same, Plaintiffs may not now hand-pick which provisions bind them and which do not. *See* Civ. C. § 1589.

*In re First Am. Fin. Corp.*, 2020 WL 7051087, at *1, is instructive. As here, the operative complaint pleaded "the existence of binding contracts as a premise of their claims." In opposing defendant's motion to compel arbitration, plaintiffs asserted that their allegation actually referred to a different agreement altogether (not just a different provision of the same agreement, as Plaintiffs claim here). *See id*. at *1 ("Plaintiffs try to argue that they are actually invoking a separate Privacy Notice that they claim to be a stand-alone contract, but this also directly contradicts the allegations of the FAC that the Privacy Notice was incorporated into the contract they entered into."). The Court rejected that position as facially false and compelled arbitration. The same result should follow here.

Plaintiffs' authorities do not support their efforts to avoid their pleading. The facts in *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014), are the opposite of those presented here. That plaintiff did not plead his assent to defendant's terms of use; he denied even knowing it existed. *Id*. at 1174-75. The Court found that plaintiff lacked notice of the terms of use because defendant employed a "browsewrap agreement," which are very different from and less conspicuous than the "sign-in wrap agreements" used by Eventbrite and approved by this Court as sufficient to confer inquiry notice. *Compare id*. at 1178-79 *with* Order at 12-14. Further, there was no indication in *Nguyen* that the plaintiff "knowingly exploit[ed]" or "receive[d] benefits flowing directly from" the TOS. 763 F.3d at 1179. Here, by contrast, Plaintiffs readily acknowledge that they agreed to the TOS in order to use Eventbrite's services to purchase credentials to third-party events. That is irrefutably a "benefit" Plaintiffs received by virtue of their agreement to the TOS.[4]

---

[4] *Cullen v. Shutterfly Lifetouch, LLC*, N.D. Cal. No. 5:20-cv-06040, Dkt. No. 58 (N.D. Cal. May 21, 2021), is similarly beside the point. There, one plaintiff never engaged in any transaction with defendant at all and thus could never have even theoretically agreed to the terms of use. *Id*. at 10-12. As to the other plaintiff, the Court determined that she did not receive adequate notice of defendant's terms of use because, among other distinguishing facts, defendant employed a browsewrap agreement. *See id*. at 12-14. It is unremarkable that courts would decline to hold a plaintiff to a contract they never knew about. But, as Plaintiffs admit, that is not the case here.

***Second***, Plaintiffs aver that Eventbrite "waived" the right to point to Plaintiffs' admission by not raising it previously. *See* Opp. at 20. This ignores that Plaintiffs' allegation did not become an established fact until months *after* the submission of Eventbrite's Motion. To be sure, none of Plaintiffs' authorities support their gambit to avoid their admission on purported "waiver" grounds. They instead concern the law-of-the-case doctrine (a discretionary principle not applicable to questions of fact) and rules applicable to motions for reconsideration (which Eventbrite's Motion is not). *Contrast, e.g.*, *Dillon*, 787 F.3d at 715 (reversing denial of renewed motion to compel as one seeking reconsideration and directing district court to consider defendant's further evidence); *Khath*, 334 F. Supp. 3d at 510 (renewed motion to compel arbitration is not one for reconsideration where Court "denied Midland's first Motion [] without prejudice, providing Midland the opportunity to present more evidence concerning the assignments issue.").

***Finally***, Plaintiffs say they should not be held to the TOS because they seek to rescind that contract pursuant to Civ. C. § 1689(b). *See id*. at 22-23. This puts the cart before the horse: a Plaintiff may seek to rescind an agreement where only she is "[a] party to [the] contract[.]" Civ. C. § 1689(b). Plaintiffs are welcome to seek rescission of the agreement they admit they made. But under the express terms of that agreement, the sole permissible forum in which Plaintiffs may seek that or any other relief is mandatory individual arbitration.

**B. Plaintiffs May Not Avoid The TOS By Accusing Eventbrite Of "Failing" To Comply With Non-Existent Discovery Obligations**

As set forth above, the Court determined last year that Exhibit I is the version of the TOS that was in effect at the time Plaintiffs submitted the orders at issue in this case, and that that contract contains language requiring mandatory individual arbitration of claims of the sort asserted here. Order at 2-4. The Court did so in part on the basis of Plaintiffs' failure to dispute that Eventbrite's sworn evidence was in fact true and correct. *Id*. at 2. Plaintiffs have never challenged that finding, and do not do so now. They similarly cannot deny that screenshots sponsored by competent witnesses (such as Exhibit I) are routinely accepted by the Courts as evidence of the contents of the website depicted.

Instead, Plaintiffs argue that Eventbrite's authenticated, undisputed screenshot somehow is suspect because Eventbrite has not *also* produced computer files involved in the display or rendering of the TOS web page. *See* Opp. at 17-18. Not only is this argument unsupported by any authority whatsoever, it would also turn every garden-variety dispute involving a website into a never-ending sideshow requiring production of voluminous computer code to confirm simple matters that are easily verified without resort to source code.

More fundamentally, Plaintiffs are simply wrong that Eventbrite was ever obliged to produce files relating to the display or rendering of the TOS. The parties in fact agreed that Eventbrite ***did not*** need to produce them, in a written stipulation calling ***only*** for those files powering ***the checkout flows*** at issue in this Motion. The files Plaintiffs now demand go exclusively to a matter that was already resolved previously, and which is not the subject of the Declaration that Plaintiffs sought discovery to test. *See, e.g.*, Tilley Decl., ¶ 4.

1. <u>The Parties Agreed That Eventbrite Would Only Produce Certain Files Relating To Its Checkout Flows, Not The Separate TOS Pages To Which Those Flows Link</u>

Plaintiffs' claims of discovery misconduct rely exclusively on definitions set forth in their second set of arbitration RFPs. *See* Opp. at 6-7. Plaintiffs propounded those requests after Eventbrite submitted a Declaration from Nick Popoff detailing Eventbrite's efforts to collect and provide evidence demonstrating the checkout flows Plaintiffs saw in submitting the orders at issue in this case, including the conspicuous disclosures notifying Plaintiffs that by submitting those orders, each affirmed that "I agree to" or "I accept" Eventbrite's TOS. *See generally* Dkt. No. 27-2. Mr. Popoff's Declaration did not address the form or content of the TOS itself, which had long since been resolved. *See id.*; Order at 2-4. Plaintiffs nevertheless sought enumerated types of files "involved in rendering or displaying the Desktop Web and Mobile Web checkout flows ***and related Terms of Service*** displayed during DEFENDANT'S checkout process." Opp. at 6-7 (emphasis in original).

The parties met and conferred at length concerning the scope of Plaintiffs' requests. *See* Tilley Decl., ¶¶ 4-5, Exh. B. Given the sole unadjudicated issue before the Court—whether the sign-in wrap flows and TOS disclosures displayed to Plaintiffs were as set forth in Eventbrite's Motion—

the parties' discussion focused on the files that powered those flows.  *Id.*  Their contemporaneous correspondence confirms as much:

- Eventbrite proposed to produce ".css, .html files, javascript files, and templating files **involved in the web checkout flows as of December 19, 2019 and February 11, 2020**, which are the dates the remaining named Plaintiffs placed the orders at issue in the complaint."  Tilley Decl., Exh. B at 10 (emphasis added);

- Plaintiffs replied "[p]erhaps this was an oversight, but your proposal does not encompass both requests.  **You are offering web checkout flows as of December 19, 2019 and February 11, 2020.  You did not address the requested mobile checkout flows. You also did not address the signup flows for web and mobile. We will need the signup flows for January 14, 2018 (Snow) and August 13, 2019 (Conner)**. In addition, you cite a number of dates in paragraph 34 of your second motion of all the times you assert Conner went through the checkout flow (and you argue means that she agreed to the TOS each of those times).  As a result, we included these dates in our definition of key checkout dates. [List of dates]  **We need the checkout flow data for those dates as well as they are a part of the evidence before the Court**."  *Id.* at 8 (emphases added);

- Eventbrite responded that it remained willing to produce software files "concerning the dates and channels [Plaintiffs] used to place the orders in issue[,]" namely, **Ms. Snow's "February 2020 order via Desktop Web" and "Ms. Conner's "December 2019 order via Mobile Web."**  *Id.* at 5-6.

Plaintiffs never mentioned (and Eventbrite never agreed to produce materials responsive to) their prior requests for the separate category of files related to the display of the TOS pages themselves.  See Tilley Decl., ¶¶ 4-5.

After further back and forth—which remained focused exclusively on the "flows" and "disclosures" displayed to Plaintiffs—the parties ultimately agreed in writing that Eventbrite would produce only those ".css files, .html files, javascript files, and templating files involved in (a) **the Desktop Web checkout Ms. Snow completed** on February 11, 2020, and (b) **the Mobile Web checkout Ms. Conner completed** on December 19, 2019."  Tilley Decl., Exh. B at 1 (emphases added).  The parties incorporated that "Email Agreement" into a stipulation submitted to and entered by the Court. Dkt. No. 37, ¶ 1.  In so modifying Plaintiffs' RFPs, the parties excised from their scope any separate groups of files relating to the display of the TOS rather than the checkout flows.

Pursuant to the parties' agreement, on January 15, 2021, Eventbrite produced all responsive files involved in the display or rendering of the checkout flows that Plaintiffs completed on the dates

identified in their Complaint.  See Tilley Decl., ¶ 6.  On January 26, Plaintiffs raised two discrete perceived deficiencies in Eventbrite's production, namely, that (1) it did not include Django python files, which Plaintiffs believed were involved in rendering and displaying Eventbrite's checkout flows, and (2) it included incorrect metadata.  *See id*. at ¶ 7, Exh. C.  The parties met and conferred in writing and by phone, during which they discussed at length matters relating to Eventbrite's checkout flows.  Those discussions omitted any mention of any files relating to the content of any webpage displaying the TOS itself.  *See id*.

> 2. Plaintiffs Did Not Move To Compel Files Relating To The TOS Pages, And The Court Did Not Order Their Production

The parties ultimately were unable to reach agreement concerning Plaintiffs' entitlement to further discovery relating to the checkout flows addressed in Mr. Popoff's Declaration, and submitted a joint discovery dispute letter to the Court.  *See* Dkt. No. 42.

In their portion of that letter, Plaintiffs confirmed that the scope of the parties' agreement concerning arbitration discovery was limited to "the website files—including the templating files—responsible for rendering and displaying the pages ***that Mr. Popoff says Plaintiffs saw***."  *Id*. at 2 (emphasis added); *see also id*. at 2-3 (arguing that Eventbrite improperly withheld "Python templating files that were responsible for rendering the pages ***that Mr. Popoff claims Plaintiffs saw.***") (emphasis added).  When it comes to what Plaintiffs saw, Mr. Popoff's Declaration ***exclusively*** addressed the technical details underlying the checkout flows that provided inquiry notice of the TOS.  *See* Dkt. No. 27-2.  Mr. Popoff's Declaration does not address the content or appearance of the TOS itself—because that issue had long been settled.  Thus, in seeking an Order compelling Eventbrite to "(i) provide the file creation and modification dates for all of the files it produced previously; and (ii) produce all Python files involved in rendering the pages on Eventbrite's website on the dates in question[,]" Plaintiffs sought production of files relating to the checkout flows, not other files relating to the content of the TOS itself.  *Id.* at 3; *see also* Order at 2-4.[5]

---

[5]   Moreover, even had Plaintiffs sought Python files involved in the display or rendering of the TOS—and they did not—***no such files exist***.  *See* Hamby Decl., ¶ 9.

On February 22, 2021, the Court directed Eventbrite to produce (a) "the requested templating files for the 14 dates previously identified in the production requests and [(b)] the dates on which the other files at issue were created or modified, and related metadata." Dkt. No. 43 at 2. The Court held that such discovery was necessary to allow Plaintiffs to test which specific "agreements Plaintiffs would have seen" on the dates of their orders, that is, the particular "sign-in wrap agreements" Eventbrite displayed to Plaintiffs during their checkout process to notify them that submission of order constituted agreement to the TOS. *Id*. at 1; *see also* Order at 1 (finding that Eventbrite's prior motion did not "show[] that the plaintiffs assented to the TOS in the first place."), 6-11 (discussing at length Eventbrite's evidence relating to the "sign-in wrap agreements" displayed to Plaintiffs and other users), and 12-15 (finding that the "sign-in wrap agreements" are sufficient under the law to bind Plaintiffs to the TOS, but that the evidence adduced was insufficient to establish that Plaintiffs did in fact see those "sign-in wrap agreements[.]").

Following entry of the Court's discovery order, and to avoid further dispute concerning Eventbrite's compliance with its discovery obligations, Eventbrite wrote Plaintiffs to confirm the scope of its production under the Court's Order. *See* Tilley Decl., Exh. D at 6.[6] In particular, Eventbrite requested Plaintiffs' confirmation that they sought only the following materials (and "created-date and modified-date metadata associated with each" file): "All .css files, .html files, javascript files, templating files, and .py files involved in displaying or rendering (a) **the Desktop Web checkout Ms. Snow completed** on February 11, 2020, and (b) **the Mobile Web checkout Ms. Conner completed** on December 19, 2019[.]" *Id.* (emphasis added). Plaintiffs responded in relevant part that "[t]he list of filetypes you identified seems fairly accurate. However, please note the RFPs' repeated use of the term '(or equivalent),' which may encompass other files beyond what you listed. For example, if there are Java or Node.js files involved in templating, they would need to be

---

[6] The "mismatch" referenced in Eventbrite's email related to the number of dates for which Eventbrite was to produce templating files relating to its checkout flows. Whereas the parties previously agreed that Eventbrite need only produce such files for the two dates on which Plaintiffs submitted the orders at issue in this case, and Plaintiffs' portion of the joint discovery letter sought relief relating only to those dates, the Court directed Eventbrite to provide checkout flow templating files for all 14 dates identified in Plaintiffs' original RFPs. *See* Dkt. No. 43 at 2.

produced as well." *Id*. at 5.[7]  The parties did not discuss then (or subsequently) Plaintiffs' brand new contention that Eventbrite was *also* required to produce any software files relating to the pages that displayed the text of the TOS itself.

Eventbrite ultimately produced all files within the scope of the Court's discovery order. *See* Tilley Decl., ¶¶ 9-11.  The process took longer than anticipated in light of vendor-related, security-related, and other issues. *See id*. Given those challenges, Eventbrite proposed to defer Mr. Popoff's deposition to a mutually-acceptable date to afford Plaintiffs' counsel sufficient time to review and consider Eventbrite's production in preparing to examine Mr. Popoff. *See* Tilley Decl., ¶ 10, Exh. E at 3.  The parties agreed to reset Mr. Popoff's deposition for June 3, 2021, and Plaintiffs requested that Eventbrite complete its production "at least one week" prior (*i.e.*, by May 27).  Tilley Decl., Exh. E at 1-2.  Eventbrite completed its production on May 25.  Tilley Decl., ¶ 11.

Having had these files for more than a month before opposing Eventbrite's Motion, Plaintiffs do not dispute that they confirm that the relevant checkout flows, and TOS disclosures advising that order submission constituted assent to the TOS, were precisely as set forth in Eventbrite's Motion.

3. <u>Plaintiffs' Characterizations Of Mr. Popoff's Testimony Are Incorrect, Inappropriate, And Irrelevant To The Issues Before The Court</u>

For reasons unknown, Plaintiffs dedicate several pages to seeking to label Mr. Popoff "evasive and obtuse[.]"  Opp. at 10-16.  Those mischaracterizations have no bearing on the parties' written agreement that Eventbrite's production would be limited to those files involved in the display or rendering of the relevant checkout flows, and not the separate TOS webpage.[8]  Nor are they relevant to the sole question before the Court, *i.e.*, whether Eventbrite has sufficiently established which checkout flows and TOS disclosures Plaintiffs saw on the dates in question.  The answer to that question undisputedly is yes.

---

[7]  Plaintiffs excised this portion of the parties' exchange from Exhibit E to the Declaration of Todd Kennedy in support of Plaintiffs' Opposition.  Eventbrite provides the missing content for the sake of completeness.

[8]  Notably, Plaintiffs did not request during Mr. Popoff's deposition—or at any time prior to their Opposition—that Eventbrite collect and produce files underpinning the pages displaying the TOS themselves.  Tilley Decl., ¶ 12; *see also* Kennedy Decl., Exh. A at 54:18-20.

- 12 -
DEFENDANT EVENTBRITE, INC.'S REPLY MEMORANDUM IN SUPPORT OF SECOND MOTION TO COMPEL
ARBITRATION
CASE NO. 3:20-CV-03698-WHO

1    Whatever Plaintiffs' motives, the premise from which they seek to attack Mr. Popoff is
2 fundamentally flawed. The purpose of his deposition was to allow Plaintiffs to explore the assertions
3 in his Declaration concerning the checkout flows and TOS disclosures Plaintiffs saw when they
4 completed the transactions at issue in this case, and the investigation he and others conducted to
5 confirm those flows. Plaintiffs spent virtually no time inquiring into those matters, likely because
6 they have reviewed Eventbrite's source code and confirmed that the facts are exactly as set forth in
7 Eventbrite's Motion. Plaintiffs instead focused on the mechanics of displaying the TOS itself, a
8 separate issue that is nowhere discussed in Mr. Popoff's Declaration. It is neither surprising nor
9 remarkable that Mr. Popoff was confused by questions concerning a new matter that he was not asked
10 to address because it is not at issue in this Motion. *See* Kennedy Decl., Exh. A at 54:8-17.

11    Plaintiffs' complaints concerning Mr. Popoff's efforts to understand and address counsel's
12 questions similarly lack merit. It is true that Mr. Popoff asked counsel to clarify what he meant by
13 "visiting" Eventbrite's website, so that he could accurately answer questions concerning what types
14 of data Eventbrite tracked, where related files were stored, and the like. *See* Opp. at 15 fn.1. This
15 was necessary because, as Mr. Popoff explained, ▮▮▮▮▮
16 ▮▮▮▮▮. *See* Kennedy
17 Decl., Exh. A at, *e.g.*, 13:15-14:25, 16:3-16, 18:23-19:11, 21:12-23. Mr. Popoff also sought to clarify
18 counsel's intended meaning of "store," within the context of questioning concerning where
19 Eventbrite stores files "contain[ing] the language of this terms of service[.]" *Id*. at 43:5-44:1. As Mr.
20 Popoff explained, elements of the page that displays Eventbrite's TOS are "produced by a number of
21 different systems[,]" and not "a singular system or a singular file which is stored in a singular place"
22 as Mr. Popoff apparently understood counsel's question to presume. *Id*. at 44:24-45:4. When asked
23 to confirm that ▮▮▮▮▮
24 ▮▮▮▮▮ Mr. Popoff answered in the affirmative and ▮▮▮▮▮
25 ▮▮▮▮▮. *Id*. at 50:22-51:12.[9] This record makes clear that Mr. Popoff wrestled with

---

[9] Plaintiffs have long known that ▮▮▮ hosts Eventbrite's TOS. Their papers note repeatedly that in August 2020, Eventbrite produced several older iterations of its TOS as ▮▮▮ "exports[.]" *See* Opp. 2-3, 17-18. They may not credibly claim surprise at this notion now.

- 13 -
DEFENDANT EVENTBRITE, INC.'S REPLY MEMORANDUM IN SUPPORT OF SECOND MOTION TO COMPEL
ARBITRATION
CASE NO. 3:20-CV-03698-WHO

questions based on incorrect assumptions, sought to clarify them to the best of his ability, and was neither "evasive" nor "obtuse" once counsel did so.[10]

4. <u>Plaintiffs' Lack Of Entitlement Notwithstanding, Eventbrite Produced All Files Showing The Content Of, And Involved In Displaying Or Rendering, The TOS</u>

In any case, once Eventbrite learned through Plaintiffs' Opposition that they had shifted their focus to the code underlying the display of the TOS pages, Eventbrite collected those files and produced them to Plaintiffs on July 13, 2021. Although they are not relevant to resolution of any remaining live issue, Eventbrite made this production to finally resolve any lingering suggestion that Plaintiffs have been deprived of a fair opportunity to test Eventbrite's evidence—including evidence previously accepted by the Court after Plaintiffs did not (and could not) dispute it. In particular, Eventbrite produced files showing the raw content of the relevant version of the TOS; "Version History" materials showing when that version was published to Eventbrite's Help Center; and the files involved in the display or rendering of the page that displayed the relevant version of the TOS, as they existed at the time of Plaintiffs' orders. *See* Dacus Reply Declaration, ¶¶ 11-12, Exhs. K-L; Hamby Decl., ¶¶ 5-12; Tilley Decl., ¶¶ 15-17 Those files confirm what Plaintiffs previously conceded and the Court already determined: that Exhibit I accurately depicts the version of the TOS in effect "during the pertinent period[.]" Order at 2-4; *see also* Hamby Decl., ¶ 13.

## III. CONCLUSION

For the foregoing reasons, the case must be dismissed, and Plaintiffs directed to pursue their claims in individual arbitration. Eventbrite's Motion should be granted in full.

Date: July 30, 2021

Respectfully submitted,

SINGER CASHMAN LLP

By: _____
Adam S. Cashman
Doug Tilley
*Attorneys for Defendant Eventbrite, Inc.*

---

[10] Plaintiffs' remaining aspersions mischaracterize the content and bases for Mr. Popoff's assertions in his Declaration. He does not need to know Plaintiffs' IP addresses or how a video was shot to know which versions of Eventbrite's source code were in effect on the relevant dates and review the same to confirm that screenshots and videos accurately reflect that code. *See* Opp. at 17.