SINGER CASHMAN LLP
 Adam S. Cashman (Bar No. 255063)
 acashman@singercashman.com
 Doug Tilley (Bar No. 265997)
 dtilley@singercashman.com
505 Montgomery Street, Suite 1100
San Francisco, California 94111
Telephone:	(415) 500-6080
Facsimile:	(415) 500-6080

*Attorneys for Eventbrite, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SHERRI SNOW, ANTHONY PICENO and LINDA CONNER, as individuals, on behalf of themselves, the general public and those similarly situated,<br><br>    Plaintiffs,<br><br>              v.<br><br>EVENTBRITE, INC.,<br><br>    Defendant. | CASE NO. 3:20-CV-03698-WHO<br><br>**DECLARATION OF DOUG TILLEY IN SUPPORT OF EVENTBRITE, INC.'S REPLY MEMORANDUM IN SUPPORT OF SECOND MOTION TO COMPEL ARBITRATION** |

I, Doug Tilley, declare as follows:

1. I am a partner with the law firm Singer Cashman LLP, counsel of record for Defendant Eventbrite, Inc. ("Eventbrite"). I submit this declaration in support of Eventbrite's Reply Memorandum in support of Second Motion to Compel Arbitration (Eventbrite's "Motion"). Unless otherwise stated, I make this Declaration based on my personal knowledge following a reasonable and diligent inquiry. If called upon, I could and would testify competently to the matters set forth below.

2. Attached hereto as **Exhibit A** is a true and correct copy of the transcript of the Initial Case Management Conference, held on November 17, 2020.

3. On December 1, 2020, counsel for Plaintiffs Sherri Snow and Linda Conner ("Plaintiffs") served Plaintiffs' second set of arbitration-related requests for production of documents (Plaintiffs' "RFPs") and second set of arbitration-related interrogatories (collectively, Plaintiffs' "Requests").[1] A true and correct copy of Plaintiffs' RFPs is attached as Exhibit B to the Declaration of Todd Kennedy in Support of Plaintiffs' Opposition to Eventbrite's Motion (Dkt. No. 50-3, "Kennedy Decl.").

4. On December 3, 2020, Mr. Kennedy, my partner Adam Cashman, and I met and conferred by phone concerning Plaintiffs' Requests, among other matters. With respect to Plaintiffs' RFPs seeking certain Eventbrite software files, Mr. Cashman and I explained that Plaintiffs' Requests appeared to call for a large volume of information that would be unduly burdensome to provide, is highly confidential, and would not inform the discrete question presented by Eventbrite's Motion. Mr. Kennedy explained that he believed such discovery was necessary to allow Plaintiffs to test the assertions in Eventbrite's Motion and the supporting Declaration of Nick Popoff concerning the specific checkout flows and sign-up flows Plaintiffs completed at the relevant times. In particular, Mr. Kennedy said "we're entitled to try and do the

---

[1] Plaintiffs previously served a first set of arbitration-related document requests and interrogatories on July 21, 2020. Eventbrite responded to those requests, both in writing and via a production of documents, on August 21, 2020.

- 1 -

DECLARATION OF DOUG TILLEY IN SUPPORT OF EVENTBRITE, INC.'S REPLY MEMORANDUM IN SUPPORT OF SECOND
MOTION TO COMPEL ARBITRATION
CASE NO. 3:20-CV-03698-WHO

same thing you did, and see if you missed anything[,]" or words substantially to that effect. By way of example, Mr. Kennedy explained that "I'd like to have the basis, like a css file so I could point to a line, for example, and be able to ask Popoff if it doesn't show that font would be underlined or blue[,]" or words substantially to that effect. The parties did not discuss any request that Eventbrite provide any software file or other information relating to the content, display, or rendering of any iteration of Eventbrite's Terms of Service ("TOS").

5. Attached hereto as **Exhibit B**, and highlighted for Court's convenience, is a true and correct copy of an email thread exchanged between myself and counsel for Plaintiffs between December 4 and December 7, 2020. As relevant here, the parties discussed at length whether and to what extent Eventbrite would produce source code and other software files relating to the display or rendering of the checkout flows Plaintiffs completed. The parties did not discuss whether Eventbrite would produce materials relating to the separate TOS page to which those checkout flows linked.

6. On January 15, 2021, pursuant to the parties' December 7 agreement, Eventbrite served written responses to Plaintiffs' Requests, and a production consisting of more than 5,100 files, including Eventbrite's highly confidential source code files, harvested from the Company's Github repository, involved in the display or rendering of (a) the desktop mobile checkout flow Plaintiff Snow completed on February 11, 2020, and (b) the mobile web checkout flow completed by Plaintiff Conner on December 11, 2019; materials showing the revision history for relevant portions of Eventbrite's source code; videos prepared by a third party and depicting certain of the checkout flows completed by Plaintiffs on the dates alleged in their complaint; and internal Eventbrite communications and logs relating to the release of certain features and enhancements to Eventbrite's platform and services.

7. By email dated January 26, 2021, Plaintiffs' counsel asserted that Eventbrite's production was deficient because it "does not contain Django python files" and "does not appear to have the correct file creation and modification dates." In my first response dated February 1, 2021, I pointed out, among other matters, that the additional discovery Plaintiffs sought "could

not inform the sole issue before the Court: the appearance of the TOS disclosures displayed to MS. Snow and Ms. Conner when they placed their orders on the dates and via channels set forth" earlier in my email. The parties met and conferred by phone on February 3, 2021 and exchanged several additional emails, in which communications they discussed the relevance and proportionality of additional discovery (a) relating to the checkout flows Plaintiffs completed on the dates alleged in the Complaint, and (b) reflecting metadata for those files previously produced. The parties did not discuss any assertion that Eventbrite was required to produce any file showing the content or other aspect of any web page displaying the TOS itself, as opposed to the checkout flows. Plaintiffs did not request that Eventbrite produce any such files. Attached hereto as **Exhibit C**, and highlighted for the Court's convenience, is a true and correct copy of an email thread exchanged between counsel for the parties between January 26 and February 9, 2021.

8. Attached hereto as **Exhibit D**, and highlighted for the convenience of the Court, is a true and correct copy of an email thread exchanged between the parties between February 24 and March 14, 2021 regarding the scope of production pursuant to the Court's February 22, 2021 Order (Dkt. No. 43). At no point during that exchange, or during the March 8 call between myself and Mr. Kennedy, did the parties discuss any request that Eventbrite produce files relating to the content or other aspect of the webpage that displays the TOS, or any assertion that Eventbrite was required to produce such materials.

9. On April 21, 2021, Eventbrite produced a large volume of source code files pursuant to the Court's February 22 Order. Eventbrite engaged a third-party forensic vendor to assist in that collection to ensure that metadata was preserved and produced. That vendor had not previously worked with Eventbrite, however, and needed to receive certain security and technical clearances in order to conduct the collection. Those issues, limitations on the availability of knowledgeable Eventbrite personnel to guide such collection, and other challenges caused Eventbrite's collection and production process to take longer than the Company had anticipated.

- 3 -

DECLARATION OF DOUG TILLEY IN SUPPORT OF EVENTBRITE, INC.'S REPLY MEMORANDUM IN SUPPORT OF SECOND MOTION TO COMPEL ARBITRATION
CASE NO. 3:20-CV-03698-WHO

10. On May 10 and 11, 2021, Eventbrite discovered that certain categories of source code files had inadvertently been omitted from the scope of its prior collection and production. I immediately alerted Plaintiffs' counsel to these oversights, promptly effected further productions from the Company's Github repository (with the assistance of a forensic vendor), and met and conferred with Plaintiffs' counsel to re-set the deposition of Mr. Popoff for a later time so that counsel could have sufficient time to review and consider Eventbrite's production in preparing to examine Mr. Popoff.

11. Eventbrite delivered the remaining files subject to the Court's February 22 Order on May 25, 2021.

12. I appeared at the June 3, 2021 deposition of Nick Popoff, on behalf of the witness and Eventbrite. Most of the questions put to Mr. Popoff during that deposition related to the display and rendering of the web page that displays Eventbrite's TOS, rather than the checkout flows discussed in Eventbrite's Motion and Mr. Popoff's supporting Declaration. I was surprised at this and did not understand the purpose of counsel's questioning, as the content of the TOS had previously been established by the Court and was not addressed in Mr. Popoff's Declaration. Plaintiffs' counsel did not request during Mr. Popoff's deposition that Eventbrite produce such information.

13. I did not suggest during Mr. Popoff's deposition, whether on or off the record, that Eventbrite declined to collect any TOS-related files because Eventbrite's collection was limited to files within the Company's records. (In fact, Eventbrite's productions in this case include materials obtained from third party Rainforest.) Rather, I explained that I had learned during a break in Mr. Popoff's testimony that any files storing the content of Eventbrite's TOS are stored by Salesforce rather than Eventbrite.

14. Following receipt of Plaintiffs' Opposition to Eventbrite's Motion—in which Plaintiffs expressed for the first time their view that Eventbrite was required to produce files to substantiate the content of the screenshot previously endorsed by the Court as depicting the relevant version of Eventbrite's TOS—I worked with Eventbrite personnel to identify, collect,

and produce to Plaintiffs all files involved in the display or rendering of the web page that displayed the relevant iteration of the TOS as of the dates of Plaintiffs' orders at issue in this case. In addition to Eventbrite in-house counsel, I worked primarily with Antwonne Dacus, Eventbrite's Content Manager, and Chase Hamby, Eventbrite's Salesforce Developer II.

15. Mr. Dacus provided me with documents substantiating the content of the relevant version of the TOS, as it was publicly displayed from March 11, 2019 through September 28, 2020. Those materials are described in greater detail in Mr. Dacus's Declaration.

16. Mr. Hamby provided me with and/or directed me to the universe of source code and software files involved in the display and rendering of the TOS, including in Eventbrite's Github repository (for which I engaged a forensic vendor to complete collection). Those files are described in greater detail in Mr. Hamby's Declaration.

17. We completed our collection efforts on July 13, 2021, and produced the foregoing files to Plaintiffs that same day.

I declare under penalty of perjury that the foregoing is true and correct. Executed at Seattle, Washington.

Dated: July 30, 2021

_____
Doug Tilley