# EXHIBIT B

# Doug Tilley

| | |
|---|---|
| **From:** | Doug Tilley |
| **Sent:** | Monday, December 7, 2020 4:24 PM |
| **To:** | Marie A. McCrary; Adam Cashman |
| **Cc:** | Todd Kennedy; eventbrite |
| **Subject:** | RE: Snow/Eventbrite - proposal concerning Plaintiffs' second set of arbitration discovery requests |
| **Attachments:** | 2020-12-07 SC edits to stip concerning second arbitration discovery requests.docx |

Thanks Marie. While you're correct that Plaintiffs' admissions that the TOS governs and they did not see any disclosures other than as set forth in Eventbrite's motion do go to the merits of the arbitration issue, they also inform the appropriate scope of arbitration discovery. If a fact is admitted, further discovery into that fact is by definition unnecessary and the burdens of providing it are disproportionate to the needs of the case. But as Plaintiffs appear to accept that Eventbrite should not be put to the additional burdens of providing further discovery concerning Ms. Snow's prior orders, I share your view that we don't need to spend more time on that particular topic.

Attached is a proposed markup reflecting our edits. (FYI, the version you provided this morning had some changes tracked. We accepted those for purposes of generating this markup.) As you'll see, rather than include the particular contours of our agreement in the stipulation, we propose to incorporate by reference the terms below. That way, there's no confusion about the parties' agreement and the Court isn't asked to review and approve compromises for which it lacks context.

1. Eventbrite will respond to the December 1, 2020 RFPs and Interrogatories, within the scope and subject to the limitations below, on or before January 15, 2021. The parties will negotiate and submit a suitable stipulated protective order prior to that time, and agree to apply the same to this discovery even if the Court declines for any reason to enter the stipulated protective order.

2. By so agreeing, Eventbrite is not conceding that any non-privileged, responsive material exists within its possession, custody, or control; can be located through a reasonable search and diligent inquiry; or is reasonably available to Eventbrite without undue burden or expense.

3. Subject to its objections, Eventbrite will produce non-privileged, responsive documents identified through a reasonable search and diligent inquiry, as follows:

    a. RFP 1-2: Eventbrite will produce .css files, .html files, javascript files, and templating files involved in (a) the Desktop Web checkout Ms. Snow completed on February 11, 2020, and (b) the Mobile Web checkout Ms. Conner completed on December 19, 2019;

    b. RFP 3: Eventbrite will produce the "internal data logs" referenced in paragraph 28 of Mr. Popoff's declaration;

    c. RFP 4: Eventbrite will produce document sufficient to show whether, between December 12 and 19, 2019, any changes were made to the portions of Eventbrite's source code referenced in paragraph 67 of Mr. Popoff's declaration;

    d. RFP 5: Eventbrite will produce any http server logs and load balancer logs relating to (a) the Desktop Web checkout Ms. Snow completed on February 11, 2020, and (b) the Mobile Web checkout Ms. Conner completed on December 19, 2019;

e. RFP 6-7: Eventbrite will produce any documents or communications exchanged with Rainforest regarding (a) its December 11, 2019 test of Eventbrite's mobile checkout flow and the resulting video, and/or (b) this litigation; and

   f. RFP 8: Eventbrite will produce v7.0.1 of its iOS App.

4. Subject to its objections, Eventbrite would respond based on a reasonable search and diligent inquiry to Plaintiffs' Interrogatory Nos. 1-3.

5. At a mutually-acceptable day and time on or before February 15, 2021 (unless otherwise agreed), Eventbrite will produce Mr. Popoff for examination concerning the matters set forth in his declaration. That deposition will be limited to 3.5 hours on the record, although (a) Plaintiffs may petition the Court for leave for additional time, upon a showing of good cause, and (b) Eventbrite may oppose any such petition.

6. Plaintiffs' Opposition to Eventbrite's Second Motion to Compel Arbitration is due March 15, 2021; and

7. Eventbrite's Reply in support of its Second Motion to Compel Arbitration is due April 15, 2021.

Please let us know if there's anything you'd like to discuss further. Otherwise, you have our consent to e-file and submit the attached revised stipulation.

Thanks very much,
Doug

---

**From:** Marie A. McCrary <marie@gutridesafier.com>
**Sent:** Monday, December 7, 2020 2:27 PM
**To:** Doug Tilley <DTilley@singercashman.com>; Adam Cashman <ACashman@singercashman.com>
**Cc:** Todd Kennedy <todd@gutridesafier.com>; eventbrite <eventbrite@gutridesafier.com>
**Subject:** Re: Snow/Eventbrite - proposal concerning Plaintiffs' second set of arbitration discovery requests

Doug,

While we don't agree with many of your characterizations below, we don't think it's necessary to argue each point in this meet and confer correspondence. The purpose of these communications is to reach agreement on a discovery and briefing schedule; not argue the merits of the parties' positions.

We can agree to the compromise that you provided today regarding the Poppoff deposition. Please include Defendant's desired language in the stipulation that I circulated this morning for our consideration.

==We continue to disagree that Defendant can make factual and legal assertions in its motion to compel arbitration (i.e., that Ms. Snow's agreed on each of her checkout dates to Eventbrite's TOS) and refuse to provide discovery regarding the same.== However, we do not think we have to reach an agreement on this point now. That is, since Eventbrite has not refused to respond to the discovery entirely, a motion to compel would be premature at this time and would unnecessarily burden the Court.

Please provide any revisions to the stipulation that you want us to consider ASAP.

Thanks,

Marie


On Mon, Dec 7, 2020 at 12:33 PM Doug Tilley <DTilley@singercashman.com> wrote:

Hi Marie, thanks for your email and we hope you all had a nice weekend.

Regarding Mr. Popoff's deposition, we cannot stipulate to an examination in excess of 3.5 record hours given the discrete issues on which he is to be examined. As a compromise, we can agree to stipulate to 3.5 hours, with Plaintiffs reserving a right to seek additional time beyond that for good cause shown (and Eventbrite reserving its rights to oppose any such request). This is the best we can do here.

Next, we read your email to seek to prohibit Eventbrite from referencing or relying upon the disclosures Ms. Snow saw during her prior orders, unless Eventbrite agrees to provide burdensome additional discovery concerning those disclosures. We cannot agree, because Plaintiffs have not and cannot establish any right to receive the further software files and other information they demand.

As the parties seeking discovery, Plaintiffs bear the burden of establishing that the information they seek is both relevant and proportional to the needs of the case. They cannot carry that burden for the subject files or, indeed, *any* of the discovery they seek. Plaintiffs specifically alleged that the orders at issue here were governed by Eventbrite's TOS (including its mandatory arbitration and class waiver provisions). That is now an admitted, established fact. Moreover, you have repeatedly confirmed in writing that Plaintiffs do not contend that they saw any disclosure other than those Eventbrite proffered in its second motion. The Court has already ruled that those disclosures are sufficient to provide inquiry notice. Thus, the only conceivable use to which Plaintiffs might seek to put the burdensome discovery they demand is to attempt to cast doubt on facts they've repeatedly admitted are true. That is not an appropriate basis for discovery.

We have asked on several occasions how or why Plaintiffs could be relieved of their judicial and other admissions. We have received no explanation. While we cannot force you to engage in a good faith exchange regarding Plaintiffs' admissions and how they affect the issues to be decided on Eventbrite's motion (and any additional discovery attendant to that), we do believe that the Court will not so easily brush aside these issues and require the far-reaching discovery Plaintiffs demand.

Despite that Plaintiffs are not entitled to *any* discovery given their admissions, Eventbrite has nevertheless conditionally agreed to collect and produce virtually all of what Plaintiffs have asked for, if only to avoid putting the Court to the burdens of further motion practice. But the demand for the software files underlying Ms. Snow's 14 prior purchases is a bridge too far. As we have explained, gathering that information would take days of dedicated Engineering time. That burden is grossly disproportional to the needs of the case particularly because the fact in issue—namely, whether the TOS "governs the transactions at issue in this case"—has already been established by Plaintiffs' own pleading. Compl., ¶ 54. That Plaintiffs have since confirmed (through your writings) that they saw no disclosures other than those already approved by the Court as sufficient to confer inquiry notice underscores that the further discovery they seek is unnecessary and inappropriate.

We renew our invitations to consider any legal basis you believe might support that Plaintiffs' judicial and other admissions somehow are not dispositive of the arbitration issue. Again, we've asked many times and Plaintiffs have

refused at length to engage on this point.  If Plaintiffs contend that further discovery into Ms. Snow's prior orders is relevant and proportional given the record (issues on which they bear the burden on any motion practice), they need to explain why.  We see no basis for such a belief, and cannot responsibly force our client to incur substantial additional burdens on the supposition that perhaps such a basis exists.  Alternatively, so we might simplify the issues for the Court, we propose that the parties simply stipulate to the current state of the record, i.e., (1) Ms. Snow's 14 prior purchases were governed by Eventbrite's then-effective Terms of Service; and (2) Ms. Snow does not claim that she saw any disclosure other than the ones proffered in Eventbrite's second motion (and supporting declaration and exhibits), with each side reserving all rights to make whatever arguments they want based on that stipulated record.

At this point, this is the best Eventbrite can reasonably do.  While we would prefer an agreement to a disputed motion, we understand that you may nonetheless feel compelled to seek relief from the Court later today.  In such case, we ask that you please submit a complete record of our exchanges so that the Court may see for itself the specific compromises Eventbrite has offered and Plaintiffs declined.  Please note that nothing in this or any other communication should be construed as a concession that any of the requested discovery is reasonable or warranted in light of the circumstances.  Rather, should motion practice be necessary, Eventbrite reserves all rights to oppose all further arbitration-related discovery.

Thanks again,

Doug

---

**From:** Marie A. McCrary <marie@gutridesafier.com>
**Sent:** Monday, December 7, 2020 8:18 AM
**To:** Doug Tilley <DTilley@singercashman.com>
**Cc:** Todd Kennedy <todd@gutridesafier.com>; eventbrite <eventbrite@gutridesafier.com>; Adam Cashman <ACashman@singercashman.com>
**Subject:** Re: Snow/Eventbrite - proposal concerning Plaintiffs' second set of arbitration discovery requests

Good Morning Doug and Adam,

Thank you for your email. Plaintiffs will agree to your proposal with the following minor caveats:

(1) We are willing to forgo seeking discovery on the additional checkout dates you cited for Ms. Snow so long as you will not rely on those dates in your Reply.

(2) With respect to RFP No. 4, we are willing to accept documents sufficient to show whether any changes were made to this relevant code section within the stated time frame as you proposed.

(3) We cannot agree to limit the length of Mr. Propoff's deposition prior to seeing the document production. You may be confident that 3.5 hours is sufficient, but you speak from the vantage point of being in possession of the relevant documents. We are willing to revisit this issue once we too are in possession of the relevant materials.

Finally, as a point of clarification, at no point have Plaintiffs conceded that they "were shown adequate disclosures as part of [their] checkout experience." Plaintiffs have only stated they will not allege they were shown disclosures different from the ones that Eventbrite alleges were presented to them in your motion.

I have attached a stipulation for the briefing schedule. Please provide any proposed edits.

Marie

On Sat, Dec 5, 2020 at 9:55 PM Doug Tilley <DTilley@singercashman.com> wrote:

> Hi Marie, thanks for your email. We have considered further, and this is the best we can do:
>
> 1. We would like to include in the stipulation that Eventbrite's response deadline of January 15, 2021 will include Eventbrite's corresponding document production so that Plaintiffs have sufficient time to review the materials and prepare for Mr. Popoff's deposition. We assume that this is what you intended below but prefer to make this explicit. Also, we previously circulated a draft protective order and we are willing to negotiate the terms and get it filed before January 15. Agreed.
>
> 3. (a) [RFP Nos. 1-2]: Perhaps this was an oversight, but your proposal does not encompass both requests. You are offering web checkout flows as of December 19, 2019 and February 11, 2020. You did not address the requested mobile checkout flows. You also did not address the signup flows for web and mobile. We will need the signup flows for January 14, 2018 (Snow) and August 13, 2019 (Conner). In addition, you cite a number of dates in paragraph 34 of your second motion of all the times you assert Conner went through the checkout flow (and you argue means that she agreed to the TOS each of those times). As a result, we included these dates in our definition of key checkout dates. They are as follows: January 14, 2018; February 24, 2018; February 27, 2018; April 2, 2018; May 2, 2018; August 24, 2018; October 30, 2018; October 31, 2018; February 26, 2019; June 29, 2019; and October 25, 2019. We need the checkout flow data for those dates as well as they are a part of the evidence before the Court. The proper scope of these requests must take into account the dates, events, and channels actually implicated by Plaintiffs' claims. With dismissal of Mr. Piceno's claims, December 19, 2019 and February 11, 2020 are the only checkout dates for which relief is sought. As set forth in Mr. Popoff's declaration (and previously in Ms. Duhring's), Ms. Snow placed her

February 2020 order via Desktop Web, and Ms. Conner placed her December 2019 order via Mobile Web. (No Plaintiff placed any order via the Smartphone App.)

Eventbrite is willing, as part of a global compromise concerning Plaintiffs' second set of arbitration-related discovery requests, to produce the many software files Plaintiffs seek concerning the dates and channels they used to place the orders in issue. That is a burdensome exercise, but Eventbrite is prepared to undertake it in the spirit of compromise.

That said, it is neither necessary, nor proportional to the needs of the case, nor even particularly useful to Plaintiffs for Eventbrite to incur the substantial additional burdens of collecting files for numerous other dates. We understand from our client that collecting those materials would take days of dedicated time from one or more Eventbrite engineers, during which they would not be able to perform their ordinary duties. That burden cannot be justified by the marginal relevance of the additional files Plaintiffs seek.

First, as Eventbrite has explained, only Ms. Conner created her account using a standalone sign-up flow as opposed to during the submission of an order. Eventbrite has already offered to provide v7.0.1 of its iOS App, which is what Ms. Conner used to create her account. Plaintiffs thus stand to receive everything they could want to test Eventbrite's assertions concerning the single standalone sign-up flow relevant to this case.

Second, while the many prior occasions on which Ms. Snow (not Ms. Conner) agreed to Eventbrite's TOS support that she agreed to those terms again in February 2020, the primary considerations here are that she has judicially admitted that her relationship with Eventbrite is governed by the TOS, and she does not dispute that she was shown adequate disclosures as part of her checkout experience for the purchase at issue here. Given that record, there is no reason to seek further discovery into the software files underlying Ms. Snow's prior orders, much less impose upon Eventbrite the disproportionate burdens of sidelining additional Engineering resources for a longer period to respond to these marginally-relevant and overburdensome requests.

3. (c) [RFP No. 4]: We may be able to accept this but we need more information. Can you provide some additional details about what information is included in the Github commit history? Is this a list of dates changes were made. We understand these records would show whether, between December 12 and 19, 2019 (respectively, the dates of the Rainforest video showing the mobile web checkout flow and Ms. Conner's order via that channel), any changes were made to the portions of Eventbrite's source code referenced at paragraph 67 of Mr. Popoff's declaration. In case it's not clear, and to say nothing of our serious relevance and confidentiality concerns, one of our primary goals in offering this compromise is to spare the parties from the significant difficulties involved in locating, preparing, and maintaining a secure environment in which to inspect source code. That cannot be done remotely. Rather, a reviewer would

have to come to a secure location in SF, in a way that complies with any state or local COVID-related restrictions are in effect at that time, to inspect source code in a secure facility (which is especially difficult to arrange in the current climate). If you prefer, we can agree to amend this RFP to be directed to "documents sufficient to show" whether any changes were made to this relevant code section within this timeframe.

3. (d) [RFP No. 5]: We are amenable to this provided that the dates correlate to those in RFP Nos. 1 and 2 as modified above. Same issue as above. Load balancer logs and http logs for Ms. Snow's prior purchases are disproportionately burdensome to collect and of minimal (if any) probative value given the record.

3. (e) [RFP No. 6-7]: For RFP No. 6, we requested both communications and documents related to the remaining video and you are offering only communications. If there are no responsive documents, please respond accordingly. If there are responsive documents, please produce them. We suspect this was probably an oversight. Agreed on RFP No. 7. "Documents and communications" is fine.

5. Plaintiffs cannot stipulate to a 3-hour time limitation on Mr. Popoff's deposition until we have had an opportunity to review the production and assess the amount of time necessary for a thorough examination. We are willing to negotiate a time limit in advance of the deposition so you can communicate it to Mr. Popoff after we've had the opportunity to review Defendant's discovery responses and document production. The issues to which Mr. Popoff will testify are narrow, and you have his detailed sworn declaration explaining exactly what he and others did and what they found. Plaintiffs will have had several months to scrutinize that declaration before examining Mr. Popoff, and at least several weeks (if not more) prior to deposition to test the assertions in his declaration via review and analysis of Eventbrite's production. As a compromise, we can make him available for a half day (3.5 record hours), but that's the limit of what we can do. This should not be a problem so long as you are focused on the issues and prepared for the deposition, which we know you will be.

6-7. Your proposed date of March 1, 2021 gives Plaintiffs 2 weeks to draft and file its response from the date of Mr. Popoff's anticipated February 15, 2021 deposition. However, you propose Eventbrite have 3 weeks from the date of Plaintiffs' response to file its reply. We suggest either both parties have 2 weeks or 3 weeks. Plaintiffs will have had 4.5 months to oppose Eventbrite's motion by the time March 1 rolls around. But if you really want more time, let's do March 15 for the Opposition and April 15 for the reply.

At this point, Eventbrite is offering Plaintiffs virtually everything you have asked for. If you have issues with this revised proposal, we can be available Sunday morning to discuss. Otherwise, please confirm your acceptance and that you will circulate a stipulation for our consideration tomorrow. Please note that, unless and until we have a firm agreement, Eventbrite continues to reserve all rights.

Thank you,

Doug

---

**From:** Marie A. McCrary <marie@gutridesafier.com>
**Sent:** Friday, December 4, 2020 7:16 PM
**To:** Doug Tilley <DTilley@singercashman.com>
**Cc:** Todd Kennedy <todd@gutridesafier.com>; eventbrite <eventbrite@gutridesafier.com>; Adam Cashman <ACashman@singercashman.com>
**Subject:** Re: Snow/Eventbrite - proposal concerning Plaintiffs' second set of arbitration discovery requests

Adam and Doug,

Thank you for getting back to us with your proposal. We are amenable to most of it and believe we can reach agreement. However, there are a few details we need to iron out. I apologize for the late response. We were not able to respond immediately to your email this afternoon as we were tied up with other matters. We wanted to get this to you ASAP though so that we can continue to hammer out these issues. We will use your numbering system to respond to each of your proposals below. Further, we will draft a stipulation in alignment with our comments below and circulate Monday am.

1. We would like to include in the stipulation that Eventbrite's response deadline of January 15, 2021 will include Eventbrite's corresponding document production so that Plaintiffs have sufficient time to review the materials and prepare for Mr. Popoff's deposition. We assume that this is what you intended below but prefer to make this explicit. Also, we previously circulated a draft protective order and we are willing to negotiate the terms and get it filed before January 15.

2. Noted.

3. (a) [RFP Nos. 1-2]: Perhaps this was an oversight, but your proposal does not encompass both requests. You are offering web checkout flows as of December 19, 2019 and February 11, 2020. You did not address the requested mobile checkout flows. You also did not address the signup flows for web and mobile. We will need the signup flows for January 14, 2018 (Snow) and August 13, 2019 (Conner). In addition, you cite a number of dates in paragraph 34 of your second motion of all the times you assert Conner went through the checkout flow (and you argue means that she agreed to the TOS each of those times). As a result, we included these dates in our definition of key checkout dates. They are as follows: January 14, 2018; February 24, 2018; February 27, 2018; April 2, 2018; May 2, 2018; August 24, 2018; October 30, 2018; October 31, 2018; February 26, 2019; June 29, 2019; and October 25, 2019. We need the checkout flow data for those dates as well as they are a part of the evidence before the Court.

3. (b) [RFP No. 3]: Agreed.

3. (c) [RFP No. 4]: We may be able to accept this but we need more information. Can you provide some additional details about what information is included in the Github commit history? Is this a list of dates changes were made?

3. (d) [RFP No. 5]: We are amenable to this provided that the dates correlate to those in RFP Nos. 1 and 2 as modified above.

3. (e) [RFP No. 6-7]: For RFP No. 6, we requested both communications and documents related to the remaining video and you are offering only communications. If there are no responsive documents, please respond accordingly. If there are responsive documents, please produce them. We suspect this was probably an oversight. Agreed on RFP No. 7.

3. (f) [RFP No. 8]: Agreed.

4. Agreed.

5. Plaintiffs cannot stipulate to a 3-hour time limitation on Mr. Popoff's deposition until we have had an opportunity to review the production and assess the amount of time necessary for a thorough examination. We are willing to negotiate a time limit in advance of the deposition so you can communicate it to Mr. Popoff after we've had the opportunity to review Defendant's discovery responses and document production.

6-7. Your proposed date of March 1, 2021 gives Plaintiffs 2 weeks to draft and file its response from the date of Mr. Popoff's anticipated February 15, 2021 deposition. However, you propose Eventbrite have 3 weeks from the date of Plaintiffs' response to file its reply. We suggest either both parties have 2 weeks or 3 weeks.

8. Agreed.

9. Agreed.

Marie

On Fri, Dec 4, 2020 at 3:10 PM Doug Tilley <DTilley@singercashman.com> wrote:

Hi Marie and Todd, thanks again for the call yesterday. We continue to view many of the categories of information Plaintiffs seek as of little to no relevance to the issues before the Court. Among other issues, given the technical and other limitations explained in the Popoff Declaration, Plaintiffs would not be able to use the information sought to generate visual depictions of many of the flows and TOS disclosures displayed to Plaintiffs at the relevant times. (Further, several of the "key" signup and checkout dates, such as those relating to Mr. Piceno, are not even arguably relevant to Eventbrite's Motion.) Moreover, the discovery Plaintiffs seek is burdensome to collect, and includes highly confidential information.

That said, we would prefer to avoid burdening the Court with additional motion practice. After speaking with Eventbrite, we are able to propose the following compromise, which should get Plaintiffs the lion's share of their requested second round of requested arbitration discovery while respecting Eventbrite's rights and objections. Please note that Eventbrite waives none of those objections and, in the event Plaintiffs decline this compromise, reserves its right to oppose further discovery in its entirety.

1. Eventbrite will respond to the December 1, 2020 RFPs and Interrogatories, within the scope and subject to the limitations below, on or before January 15, 2021. The parties will need to negotiate and submit a suitable stipulated protective order prior to that time, and agree to apply the same to this discovery even if the Court declines for any reason to enter the stipulated protective order.

2. By so agreeing, Eventbrite is not conceding that any non-privileged, responsive material exists within its possession, custody, or control; can be located through a reasonable search and diligent inquiry; or is reasonably available to Eventbrite without undue burden or expense.

3. Subject to its objections, Eventbrite would produce non-privileged, responsive documents and information, as follows:

> a. **[RFP Nos. 1-2]** .css files, .html files, javascript files, and templating files involved in the web checkout flows as of December 19, 2019 and February 11, 2020, which are the dates the remaining named Plaintiffs placed the orders at issue in the complaint. As discussed yesterday, Eventbrite may apply redactions as may be necessary to protect particularly sensitive content;
>
> b. **[RFP No. 3]** The "internal data logs" referenced in paragraph 28 of Mr. Popoff's declaration;
>
> c. **[RFP No. 4]** In lieu of source code production, which is burdensome, irrelevant, implicates substantial confidentiality issues, and would require an in-person inspection that may not be permissible under the lockdown orders issued today in the Bay Area, Eventbrite will produce any Github commit history for the portion of Eventbrite's source code that relates to the mobile web checkout flow for the period Dec. 11, 2019 – Dec. 19, 2019, which would indicate whether any changes were made to that section of code reviewed by Mr. Popoff during that time frame (the other two videos relate exclusively to Mr. Piceno. Because he no longer asserts claims in this action,

discovery concerning disclosures made to him are irrelevant to Eventbrite's motion and thus not proper discovery);

 d. **[RFP No. 5]** Eventbrite would produce any "load balancer logs" or "http server logs" for the time frame requested;

 e. **[RFP Nos. 6-7]** Eventbrite would produce any communications with Rainforest regarding its December 11, 2019 test of Eventbrite's system, and the resulting video (which, again, is the only Rainforest video/screenshot discussed by Mr. Popoff that doesn't relate to Mr. Piceno's orders). Eventbrite would also produce any documents or communications with Rainforest regarding this action; and

 f. **[RFP No. 8]** Eventbrite would produce its iOS v. 7.0.1 application.

4. In addition, and again subject to its objections, Eventbrite would respond based on a reasonable search and diligent inquiry to Plaintiffs' Interrogatory Nos. 1-3.

5. Further, Eventbrite would make Mr. Popoff available at a mutually-agreeable day and time, on or before February 15, 2021 for a deposition of no more than three hours on the record;

6. Plaintiffs' deadline to oppose Eventbrite's pending motion would be continued to March 1, 2021;

7. Eventbrite's reply would be due on or before March 22, 2021;

8. Plaintiffs agree that no Plaintiff will contend in opposing Eventbrite's Second Motion to Compel Arbitration that in creating their accounts or placing the orders at issue, they saw a sign-in flow, checkout flow, or TOS disclosure different from those set forth in Eventbrite's Motion, as represented in counsel's December 1, 2020 email; and

9. All other discovery would remain stayed unless/until otherwise agreed by the parties or ordered by the Court.

Please let us know if Plaintiffs will agree and, if so, please circulate a draft stip.


Thanks again,

Doug



**Doug Tilley**


***Please note our new address***

505 Montgomery Street, Suite 1100

San Francisco, California 94111

(415) 500-6080 (main/fax)

(628) 400-3961 (direct)

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

--

Marie A. McCrary
Gutride Safier LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: 415-639-9090, ext. 107

Facsimile: (415) 449-6469
www.gutridesafier.com

--

Marie A. McCrary
Gutride Safier LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: 415-639-9090, ext. 107

Facsimile: (415) 449-6469
www.gutridesafier.com

\--
Marie A. McCrary
Gutride Safier LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: 415-639-9090, ext. 107
Facsimile: (415) 449-6469
[www.gutridesafier.com](www.gutridesafier.com)